BEVERLY, f.k.a. Parilla, Appellant,

v.

PARILLA, Appellee.

[Cite as *Beverly v. Parilla*, 165 Ohio App.3d 802, 2006-Ohio-1286.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 04 CO 55.

Decided March 17, 2006.

Nicholas Barborak and Virginia Barborak, for appellant.

Randil Rudloff, for appellee.

VUKOVICH, Judge.

{¶ 1} Plaintiff-appellant, Mabel Beverly, appeals the decision of the Columbiana County Common Pleas Court that rejected her interpretation of a prenuptial agreement and refused to order spousal support against defendant-appellee Charles Parilla. Appellant claims that the prenuptial agreement entitled her to a monthly payment from appellee's pension in an amount equal to the spousal support she forfeited from her ex-husband as a result of her marriage to appellee. In the alternative, she urges that spousal support should have been awarded to her based upon the statutory considerations of R.C. 3105.18.

{¶ 2} For the following reasons, we hold that the prenuptial agreement does not entitle appellant to restoration of her position before marriage. However, ordinary spousal support was not prohibited by the agreement and thus should have been considered under R.C. 3105.18. Because the trial court erroneously found that spousal support was prohibited by the agreement, this case is reversed and remanded for consideration of whether spousal support is reasonable and appropriate based upon the statutory factors.

## STATEMENT OF THE CASE

{¶ 3} In 1995, appellant was divorced from her first husband. That decree entitled her to $500 per month in spousal support for 15 years, to terminate in the

event of her death, remarriage, or cohabitation. She also received monthly Social Security benefits due to her former husband's employment.

{¶ 4} Appellant began dating appellee in 1996. They became engaged in late December 2000. Appellee testified that he disclosed to appellant that he needed to have a document drawn up to protect his assets for his four children from his prior marriage. A couple of months later, they set a wedding date of Saturday, April 28, 2001.

{¶ 5} Appellee contacted his attorney to draw up a prenuptial agreement. This attorney testified that appellee had called him at the end of March 2001, that appellee brought in the requested information the next week, and that he then drafted the agreement for appellee's retrieval by the end of that week. Appellee testified that he had provided this first draft to appellant two weeks before the wedding. At the first trial, appellant claimed that she had not been given this first draft until the Wednesday before the wedding and that she had not read it until the next day. But at the continued hearing, she stated that she had received the document on the Tuesday before the wedding.

{¶ 6} Appellant was concerned that the prenuptial agreement failed to protect her. She talked to her pastor about it, and he advised her to obtain an attorney. When she voiced her concerns to appellee, he contacted his attorney and asked him to add a provision that would name appellant the sole beneficiary of his 401(k) for nine years (which would have been the latest date that she could have collected spousal support from her former husband).

{¶ 7} For purposes relevant to this appeal, the agreement may be summarized as follows. Introductory paragraph two states that its purpose is to define the parties' respective rights in the property of the other and to avoid those interests that either party might acquire in the property of the other incidental to the marital relationship. Exhibits were attached, noting each party's premarital property. Article two provides that any property owned by either party at the time of the marriage and listed on the exhibits constitutes nonmarital property and that each waives any right in the property of the other acquired before marriage, except as specifically set forth in the agreement. And the parties agreed that the appreciation of their pensions during their marriage would be treated as nonmarital property.

{¶ 8} Article three provides that each party waives all right to dower, inheritance, and distributive shares in the estate of the other, unless property is specifically bequeathed. Article four states that the parties shall reside in appellant's residence and that the costs of operation of the household shall be paid by their joint incomes. This article also states that if the marriage ends by divorce, appellant shall retain her interest in the residence and shall have the exclusive right to occupancy.

{¶ 9} Article five, around which the present dispute centers, is entitled divorce, dissolution, and annulment, and reads:

{¶ 10} "It is the intention of the parties that this Agreement shall govern even if the marriage shall end in divorce, dissolution or annulment, or if one of the parties should file an action for legal separation in a Court of competent jurisdiction.

{¶ 11} "It is the intention of the parties that upon divorce or dissolution or annulment that each party shall be entitled to have as their separate property the property listed on Exhibits 'A' and 'B' and are attached hereto. The parties acknowledge that [appellant] will suffer a loss of Alimony and Social Security benefits as a result of this marriage. Therefore, in the event the marriage should terminate, [appellant] shall be entitled to a QUALIFIED DOMESTIC RELATIONS ORDER ["QDRO"] in regard to [appellee's] pension right from his place of employment, i.e. R.M.I.

{¶ 12} "Further, [appellant] shall be designated as the sole beneficiary of [appellee's] 401K for a period of not less than nine (9) years from the date of this Agreement."

{¶ 13} Article six states that the agreement may be changed only in writing. Article seven states that each party read and fully understood the terms of the agreement, that the agreement represents their entire understanding, and that it was voluntarily signed. Article nine notes that appellee was represented by an attorney and that appellant was advised to obtain counsel, but she chose to execute the agreement without doing so.

{¶ 14} Appellee's attorney testified that the final draft was completed sometime between Tuesday, April 17 and Thursday, April 19. And appellee testified that he gave this draft to appellant on Thursday or Friday of that week. He stated that it was not signed until a week later because appellant kept putting off signing it. However, appellant claimed that she was not given the final draft until Thursday, April 26, two days before the Saturday, April 28 wedding.

{¶ 15} The prenuptial agreement was signed and notarized on Thursday, April 26, 2001. Although the agreement and appellee and the pastor all advised appellant to retain an attorney, she did not do so prior to signing. She testified that she unsuccessfully tried to contact various attorneys for advice the day *after* she signed the agreement. The wedding took place as scheduled on April 28, 2001.

{¶ 16} Appellant quit her $8 per hour job just prior to marriage in order to work on appellee's tree farm. Appellee retired from his job at R.M.I. a year after the marriage, at appellant's urging.

{¶ 17} On March 31, 2003, appellant filed for divorce and sought spousal support. Appellee answered and attached the prenuptial agreement. Trials were held on February 18, 2004, and July 1, 2004. Posttrial memoranda were submitted in September 2004. The trial court entered a divorce decree on October 7, 2004.

{¶ 18} Various stipulations were journalized. The court then addressed the remaining issues. As for the issues relevant herein, the court found that property division and spousal support were controlled by the agreement. The court disagreed with appellant's interpretation of the agreement and found that there was no indication that she was contractually entitled to payments from the pension equal to that of the $500 per month spousal support award she forfeited by getting married. The court also found that the testimony of appellee and his attorney regarding dates was more credible. The court concluded that the agreement entitled appellant to a QDRO over the marital portion of appellee's pension and to be named the sole beneficiary of his 401(k) until April 26, 2010.

{¶ 19} Appellant filed timely notice of appeal. The appeal was originally held in abeyance until the QDRO was entered. Then, we remanded for the trial court to address a posttrial motion. Appellant filed her brief in November 2005.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 20} Appellant's first assignment of error contends:

{¶ 21} "The trial court erred as a matter of law in not restoring plaintiff to her premarital position with respect to spousal support in light of the terms of an antenuptial agreement."

{¶ 22} Generally, the law of contracts applies to prenuptial (or antenuptial) agreements. *Fletcher v. Fletcher* (1994), 68 Ohio St.3d 464, 467, 628 N.E.2d 1343. Some special rules have been added governing the enforceability of such agreements due to the confidential relationship between future spouses. Id. (burden of full disclosure).

{¶ 23} We first note that the court's finding that appellee's and his attorney's recollection of the dates of the first and final drafts were correct is supported by competent and credible evidence. See id. at 468, 628 N.E.2d 1343. The court was entitled to disbelieve appellant's inconsistent testimony that she received the first draft three days before the wedding and the final draft two days before the wedding. See id. Regardless, this assignment of error deals only with the proper interpretation of the terms of the prenuptial agreement, not its enforceability or validity.

{¶ 24} In construing any written instrument, the primary objective is to ascertain the parties' intent. *Aultman Hosp. Assn. v. Hosp. Care Corp.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. The first step is to determine whether the disputed language of the instrument can be characterized as plain and unambiguous. The language is unambiguous if, from reading only the four corners of the instrument, the language is clear, definite, and subject to only one interpretation. The language is ambiguous if it is unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning.

{¶ 25} When the language of the written instrument is clear and unambiguous, the interpretation of the instrument is a matter of law, and the court must determine the intent of the parties through only the language employed. *Davis v. Loopco Indus., Inc.* (1993), 66 Ohio St.3d 64, 66, 609 N.E.2d 144 (if a contract is clear and unambiguous, then its interpretation is a matter of law, and there is no issue of fact to be determined). In such cases, the court may not resort to extrinsic or parol evidence. In other words, when a written instrument is unambiguous, intentions not expressed by writing in the contract are deemed to have no existence and cannot be shown by parol evidence. *TRINOVA Corp. v. Pilkington Bros., P.L.C.* (1994), 70 Ohio St.3d 271, 275, 638 N.E.2d 572.

{¶ 26} When the language is ambiguous, there arises a factual question, and the court may consider extrinsic or parol evidence to ascertain the intent behind the language. *Davis,* 66 Ohio St.3d at 66, 609 N.E.2d 144. When the court finds ambiguity in a contract such that it is necessary to resort to extrinsic evidence to determine intent, intent becomes a factual question for the trier of fact.

{¶ 27} Here, article five provides that the pre-agreed-upon separate property will remain separate and that appellant will be entitled to a QDRO over appellee's pension. That the contract provides a right, a QDRO over the pension, that she would have been entitled to had there been no contract is not indicative of an intent to restore her to her premarital position such that she is entitled to collect the same amount she had received from her former husband. Rather, it represents his intent for her to maintain her share of the ·marital portion of appellee's pension even though the pension was listed in the agreement's exhibit as property that the parties agreed to keep separate.

{¶ 28} The contract does not specify that appellant shall be restored to her prior position of receiving $500 per month in spousal support. Article five's acknowledgement and mention that appellant would suffer a loss of alimony and Social Security benefits as a result of the marriage does not mean that she is

entitled to receive that same alimony from appellant's pension in the form of a QDRO if the marriage ended in divorce. Nor does recognition of her loss create an ambiguity.

{¶ 29} And contrary to appellant's suggestion, placing the 401(k) beneficiary designation paragraph under the divorce, dissolution, or annulment heading did not make the contract ambiguous just because the designation involves death. She is entitled to this beneficiary designation for nine years, even if the marriage ends in divorce, dissolution, or annulment. Thus, placement under this heading does not make an otherwise plain agreement ambiguous.

{¶ 30} Even assuming arguendo that the language in question is ambiguous, the trial court could validly hold that the parties' intent was contrary to the interpretation now claimed by appellant. The general rule of construing an ambiguous contract against the drafter does not mean automatically holding in favor of the other party in a case such as this. See *Fletcher*, 68 Ohio St.3d at 466, 628 N.E.2d 1343 (for contrast, compare majority with dissent). Rather, this rule of construction is merely a guiding principle the court uses in determining the parties' intent after viewing the extrinsic evidence presented by the parties. Otherwise, extrinsic evidence would be irrelevant.

{¶ 31} The trial judge was the fact-finder who presided at trial and viewed the witnesses' gestures, demeanor, and voice inflections. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79–80, 10 OBR 408, 461 N.E.2d 1273. See, also, *Fletcher* at 468, 628 N.E.2d 1343. The trial court was entitled to find that the parties' intent did not involve providing appellant with $500 per month from appellee's pension to compensate her for losing spousal support from her former husband. Thus, even if resorting to extrinsic evidence to determine an ambiguity were necessary, the court's decision would still be upheld. This assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 32} Appellant's second assignment of error provides:

{¶ 33} "The trial court erred as a matter of law and abused its discretion in not awarding spousal support to plaintiff."

{¶ 34} Here, appellant cites R.C. 3105.18 and urges that she is entitled to spousal support under the statutory factors relevant herein. She notes that she receives approximately $600 per month in Social Security and can barely pay her bills. She claims that she has no job prospects because she always held manual jobs and now has health problems such as asthma and an injured heel. She points out that she quit her full-time job with benefits because appellee asked her to work on his tree farm. (It is noted that he paid off her nearly $9,000

residential mortgage in return for her assistance.) She has no education or job training. And she was 66 years old at the time of the divorce.

{¶ 35} She contrasts her situation with appellee's, noting that he has numerous income sources, such as a pension of almost $1,400 per month after taxes, approximately $1,400 per month in Social Security, and $1,800 per month in rental income (minus utilities and expenses) from his several properties. She also notes that he owns a tree farm with a $600 mortgage. And she opines that this farm has income potential.

{¶ 36} A court can grant spousal support upon request. R.C. 3105.18(B). The court shall consider the factors in R.C. 3105.18(C) and award only an amount that is reasonable and appropriate. Id. The factors listed in R.C. 3105.18(C)(1) are as follows:

{¶ 37} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

{¶ 38} "(b) The relative earning abilities of the parties;

{¶ 39} "(c) The ages and the physical, mental, and emotional conditions of the parties;

{¶ 40} "(d) The retirement benefits of the parties;

{¶ 41} "(e) The duration of the marriage;

{¶ 42} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

{¶ 43} "(g) The standard of living of the parties established during the marriage;

{¶ 44} "(h) The relative extent of education of the parties;

{¶ 45} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

{¶ 46} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

{¶ 47} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

{¶ 48} "(l) The tax consequences, for each party, of an award of spousal support;

{¶ 49} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

{¶ 50} "(n) Any other factor that the court expressly finds to be relevant and equitable."

{¶ 51} Need can be considered in determining whether an award is reasonable and appropriate, but need is not the sole consideration or the threshold test. *Olenik v. Olenik* (Sept. 18, 1998), 7th Dist. No. 94CA139, 1998 WL 668162. Appellant's acts of providing appellee with a residence, quitting her job, and working on his tree farm are considerations. Her health and job potential are relevant, as is her age. The diversity in income and assets is of consequence. The short duration of the marriage is of negative significance to appellant. However, her forfeiture of spousal support and a year's worth of Social Security from her prior husband in order to marry appellee can be considered.

{¶ 52} Generally, we review a trial court's decision on spousal support only for an abuse of discretion. *Corradi v. Corradi*, 7th Dist. No. 01CA22, 2002-Ohio-3011, 2002 WL 1376061, at ¶ 51. *But here there was no discretion utilized.*

{¶ 53} Rather, the trial court opined that issues of property division *and issues of spousal support* were governed by the prenuptial agreement. However, the agreement's introductory paragraph two specifically provides:

{¶ 54} "The purpose of this Agreement is for the parties to define their respective rights in the property of the other. It is further the purpose of this Agreement to avoid those interests which either party might acquire in the property of the other as incidents of the marriage relationship, but for the operation of this Agreement."

{¶ 55} Protection of interests in separate property is not a concept related to spousal support. Instead, it is related only to property division.

{¶ 56} Furthermore, there is absolutely no reference to spousal support in the agreement. Nowhere does it state that appellant waives her right to court-ordered spousal support or maintenance in the case of a divorce. Failure to mention spousal support in an agreement dealing with preservation of separate property is not an agreement that spousal support shall never be awarded as permitted by statute.

{¶ 57} Thus, the court was legally incorrect when it held that issues of statutory spousal support were controlled by the agreement. Although appellant's claimed right to a $500 per month QDRO over appellee's separate property portion of his pension was controlled by the prenuptial agreement, the general statutory right to have spousal support considered was not.

{¶ 58} For the foregoing reasons, the judgment of the trial court is hereby reversed, and this cause is remanded with instructions to thoroughly review the record, apply the spousal support factors in R.C. 3105.18, and determine whether any amount of spousal support would be reasonable and appropriate.

Judgment reversed
and cause remanded.

Donofrio, P.J., and Waite, J., concur.