DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the November 28, 2005 judgment of the Lucas County Court of Common Pleas which denied appellant Herbert A. Howard's motion for reconsideration following the trial court's decision granting appellee William D. Cannon's[1] motion for summary judgment. For the reasons that follow, we affirm the trial court's decision.
 {¶ 2} The relevant facts of this case are as follows. In 2001, appellee, William Cannon, was the owner of real property located at 4258 Bonnie Brook Road, in the village of Ottawa Hills, Lucas County, Ohio ("the property".) In August 2001, appellant and appellee had discussions regarding a possible sale of the property to appellant. On August 18, 2001, appellant tendered a $5,000 check to appellee as earnest money toward the purchase of the property. After receiving the check, appellee wrote the following on the back of the check above his signature:
 {¶ 3} "Basic Terms —
 {¶ 4} "1. Price $175,000
 {¶ 5} "2. Rent — $1,000 mo. for 18 mos.
 {¶ 6} "3. balance — $150,000
 {¶ 7} "Subject to legal
 {¶ 8} "okays re collateral
 {¶ 9} "for security.
 {¶ 10} "Sale to Thomas Howard
 {¶ 11} "Deal to close within
 {¶ 12} "30 days."
 {¶ 13} As directed by appellant, appellee then went to a business operated by Thomas Howard, appellant's son, and received $5,000 cash for the check. On August 20, 2001, appellee gave appellant a receipt for the check which read:
 {¶ 14} "Received from Herbert Howard
 {¶ 15} "$5,000 deposit on purchase of
 {¶ 16} "4258 Bonnie Brook.
 {¶ 17} "D. William Cannon"
 {¶ 18} On that same day, appellee met with his attorney to discuss the transaction. According to appellee, his attorney "reviewed the proposed transaction and would not approve it as written." Also that day, appellant met with appellee and his attorney to discuss the purchase of the property. At that time, appellee's attorney indicated that he had some objections to the manner of payment and to the collateral. Appellant then offered to pay the full purchase price of $175,000 in cash. Appellee's attorney then prepared a Residential Real Estate Purchase Agreement which appellee signed; appellant requested that the agreement be sent to his attorney. Thereafter, the agreement was returned to appellee with multiple changes; each change was accompanied by the initials "T.H." The purchaser was listed as "The Four Howards, Ltd." and signed by Thomas Howard. However, in Thomas Howard's affidavit he denies any involvement in the negotiations personally or on behalf of The Four Howards. Appellee stated that after receiving the modified agreement, he refused to consent to the changes.
 {¶ 19} On September 12, 2001, appellant received confirmation that his $170,000 bank loan to purchase the property had been approved; however, appellee refused to proceed with the sale. Appellant then commenced this case.
 {¶ 20} In his September 18, 2001 complaint, appellant requested specific performance and "mental anguish" damages. On February 10, 2003, appellant filed an amended complaint which included a claim for reformation of contract.
 {¶ 21} In the interim, on October 22, 2001, appellee filed his answer and a counterclaim against appellant. The counterclaim alleged that appellant filed the lawsuit in order to prevent appellee from selling the property to a third party who had submitted a written offer; appellee alleged that he sustained damages as a result of losing the sale. Appellee also instituted a third party complaint against defendants, The Four Howards, Ltd. and Thomas Howard, alleging that they were vicariously liable for the acts of appellant, who was acting as their agent.
 {¶ 22} On January 16, 2002, appellee filed a motion for summary judgment as to appellant's complaint.[2] Appellee argued that the alleged agreement failed to comply with the statute of frauds in that all of the essential terms were not in writing. Appellee further argued that he was never bound by the proposed agreement because it was contingent upon legal approval. On January 31, 2002, appellant filed a motion for summary judgment as to appellee's counterclaim.
 {¶ 23} On May 22, 2002, third-party defendants, Howard and The Four Howards, filed a motion for summary judgment arguing that because they never signed a written agreement and they never authorized the instant lawsuit they could not be liable for the claims alleged by appellee.
 {¶ 24} On May 28, 2003, the trial court granted appellee's motion for summary judgment, denied appellant's motion for summary judgment, dismissed appellant's claim for specific performance, and denied the third-party defendants' motion for summary judgment. The court found that although together the check and receipt formed a valid contract, the contract was not enforceable due to the failure of the condition precedent, i.e. approval by appellee's attorney.
 {¶ 25} Thereafter, appellant filed a motion for reconsideration because the court's decision was not a final order. Appellee filed a motion for summary judgment as to his counterclaim against appellant and his claims against the third-party defendants. Specifically, appellee sought summary judgment on two of his three claims: malicious prosecution and abuse of legal process. Appellant and third party-defendants filed a motion for summary judgment as to all three of appellee's claims (the third claim being tortious interference with contract). Appellant then filed an additional motion for summary judgment against appellee as to his "supplemental complaint."[3]
 {¶ 26} On December 27, 2004, the trial court denied appellee's motion for summary judgment, granted, in part, and denied, in part, appellant and third-party defendants' motion for summary judgment, and denied appellant's motion for summary judgment on his supplemental complaint. Further, the court denied appellant's motion for reconsideration regarding the court's prior decision granting summary judgment.
 {¶ 27} Appellant again filed a motion for reconsideration of the trial court's judgment granting summary judgment to appellee. The essence of appellant's arguments was that the agreement was subject to appellee's attorney's approval regarding only the collateral. In other words, the attorney did not have the ability to "veto the entire deal or sale." Appellant also requested an oral hearing on the motion. In its final order of November 28, 2005, the trial court denied appellant's motion. This appeal followed.
 {¶ 28} Appellant now raises the following two assignments of error:
 {¶ 29} "I. The trial court committed reversible error in granting defendant Cannon's motion for summary judgment on May 22, 2003, and also denying plaintiff Howard's motion for reconsideration, filed on March 19, 2004, by trial court judgment entry of December 20, 2004, and also by the trial court's final judgment of November 28, 2005, which denied plaintiff's motion for reconsideration filed February 2, 2005, asking all summary judgments against Mr. Howard be reversed; and lastly from the trial court's opinion and judgment entry upon reconsideration was journalized on November 28, 2005.
 {¶ 30} "2. The trial court committed reversible error in denying the motion for oral hearing on defendant Cannon's motion for summary judgment, so moved by plaintiff's counsel; and all trial courts should be so ordered, on an important case, as this is, before the court makes a firm or final ruling to give due process to each party."
 {¶ 31} In appellant's first assignment of error he contends that the court erroneously granted summary judgment in appellee's favor and erroneously refused to reconsider the decision. Appellant appealed from the November 28, 2005 judgment because the court's prior orders were not "final and appealable" as required under Civ.R. 54(B).
 {¶ 32} We first note that appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brownv. Scioto Cty. Bd. Of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt,75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).
 {¶ 33} Appellant argues that the trial court erroneously determined that the provision in the contract which provided that the agreement was subject to approval regarding the collateral permitted the attorney to void the sale entirely. Appellant further contends that the trial court's determination that the approval of collateral was a condition precedent improperly exceeded the arguments of the parties. Finally, appellant argues that the trial court erred by not ordering a reformation of the contract to reflect appellant's subsequent oral offer of $170,000 in cash.
 {¶ 34} In an action based on contract, "[t]he cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." FosterWheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth., 78 Ohio St.3d 353, 361, 1997-Ohio-202, citing AultmanHosp. Assn v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51,53. "`The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" Id., quoting Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, paragraph one of the syllabus. It is a tenant of contract interpretation that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus.
 {¶ 35} Contract language is ambiguous "if it is unclear, indefinite, and reasonably subject to dual interpretations * * *."Beverly v. Parilla, 165 Ohio App.3d 802, 2006-Ohio-1286, at ¶ 24. When a court finds an ambiguity in the contract language, the intent of the parties becomes a question of fact; in order to ascertain such intent, the trier of fact may rely on extrinsic evidence. Id. at ¶ 26.
 {¶ 36} In the present case, the trial court determined that the "subject to" provision regarding the approval of collateral unambiguously conditioned the entire agreement on appellee's attorney's approval of the collateral. The court determined that the agreement as unenforceable because the collateral was never approved. In other words, the court found that a condition precedent had not been fulfilled.[4]
 {¶ 37} "A condition precedent is a condition which must be performed before the obligations in the contract become effective." Troha v. Troha (1995), 105 Ohio App.3d 327, 334, citing Mumaw v. W. S. Life Ins. Co. (1917), 97 Ohio St. 1. "Whether a provision in a contract is a condition precedent is a question of the parties' intent. Intent is ascertained by considering not only the language of a particular provision, but also the language of the entire agreement and its subject matter." Id. Upon review of the check at issue and the subsequent receipt, we agree with the trial court's conclusion that the language "subject to" contained on the $5,000 earnest money check evidenced an intent to condition the sale upon the approval of collateral.
 {¶ 38} Appellant further argues that assuming that there were "any gaps in the proof, or pleadings," the court erred in failing to permit reformation of the check agreement. Appellant citesMason v. Swartz (1991), 76 Ohio App.3d 43, to support his contention. In Mason, this court noted that "[r]eformation of an instrument is an equitable remedy whereby a court modifies the instrument which, due to mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties." Id. at 50. Thus, in order for a court to modify a contract there must have been a mutual mistake by the parties. Here, there is no evidence of mistake. Appellee's attorney simply rejected the proposed collateral and the agreement became unenforceable.
 {¶ 39} Based on the foregoing, we find that reasonable minds could only conclude that because the collateral was not approved by appellee's attorney, the contract was not enforceable. Further, the contract was not subject to reformation. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 40} In appellant's second assignment of error he argues that the trial court erred when it denied appellant's motion for an oral hearing on appellee's motion for summary judgment. InHooten v. Safe Auto Ins. Co., 100 Ohio St.3d 8, 2003-Ohio-4829, the Supreme Court of Ohio acknowledged that "Ohio's appellate courts uniformly agree that a trial court is not required to schedule an oral hearing on every motion for summary judgment." (Citations omitted.) Id. at ¶ 14. The court further stated that "[w]hether to grant a party's request for oral hearing is a decision within the trial court's discretion." (Citations omitted.) Id.
 {¶ 41} Upon review of appellant's argument and the record in this case we cannot say that the trial court erred when it denied appellant's request for an oral hearing. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 42} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J., Skow, J. Concur.
[1] Appellee was incorrectly named on the complaint; his proper name is "D. William Cannon."
[2] The motion was refiled on February 12, 2003, following the filing of appellant's amended complaint.
[3] Appellant's supplemental complaint, filed March 29, 2004, alleged conversion based upon appellee's alleged refusal to refund appellant's $5,000 earnest money.
[4] Appellant argues that the issue of a condition precedent was never presented between appellant and appellee. We disagree. In appellee's January 16, 2002 motion for summary judgment appellee argues, in addition to his statute of frauds argument, that the agreement was conditioned on legal approval of the collateral. After discussing the collateral with his attorney, appellee decided to "exercise his right not to proceed with said transaction." Although appellee did not explicitly term the condition as a "condition precedent" clearly, that was what was being argued.