OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Appellant, Mabel Parilla, appeals the decision of the Columbiana Court of Common Pleas denying her request that Appellee, Charles Parilla, pay her spousal support. Because the trial court based its decision on multiple appropriate factors including the short duration of the marriage, we cannot say it abused its discretion in denying Mabel's request for spousal support. The decision of the trial court is affirmed.
 {¶ 2} This Court previously set forth the pertinent underlying facts as follows:
 {¶ 3} In 1995, Mabel was divorced from her first husband. That decree entitled her to $500 per month in spousal support for 15 years, to terminate in the event of her death, remarriage, or cohabitation. She also received monthly Social Security benefits due to her former husband's employment.
 {¶ 4} Mabel began dating Charles in 1996. They became engaged in late December 2000. Charles testified that he disclosed to Mabel that he needed to have a document drawn up to protect his assets for his four children from his prior marriage. Charles contacted his attorney to draw up a prenuptial agreement. The prenuptial agreement was signed and notarized and the wedding took place as scheduled on April 28, 2001.
 {¶ 5} Mabel quit her $8 per hour job just prior to marriage in order to work on Charles' tree farm. Charles retired from his job at R.M.I. a year after the marriage, at Mabel's urging.
 {¶ 6} On March 31, 2003, Mabel filed for divorce and sought spousal support. Charles answered and attached the prenuptial agreement. The trial court entered a divorce decree on October 7, 2004.
 {¶ 7} The following stipulations were journalized:
 {¶ 8} "1) Mabel Parilla shall retain the kitchen range; garbage disposal; television; and wedding gifts (except as specified below) that are currently in her possession.
 {¶ 9} 2) Charles Parilla shall retain the computer and software; desk; telescope; and filing cabinet that are currently in his possession.
 {¶ 10} 3) Mabel Parilla shall give to Charles Parilla the set of dishes from his sister *Page 2 
and the two silver wine goblets from his aunt.
 {¶ 11} 4) Charles Parilla paid $1,000 towards repairs on the Jeep driven by Mabel Parilla.
 {¶ 12} 5) Mabel Parilla shall sign the title of the 1997 automobile to Charles Parilla.
 {¶ 13} 6) Mabel Parilla worked on Charles Parilla's tree farm and the value of the work is relatively equal to the new roof and mortgage payoff that Charles Parilla paid on Mabel Parilla's behalf.
 {¶ 14} 7) Neither party will attempt to recover the value of the work on the farm, nor the value of the mortgage payoff or roof.
 {¶ 15} 8) All real estate was purchased prior to the marriage.
 {¶ 16} 9) The barn, bobcat, hauling trailer, and dump truck were purchased by Charles Parilla with distributions from his father's estate.
 {¶ 17} 10) The 2002 income tax refund, valued at $6,562.00, shall be divided equally between the parties.
 {¶ 18} 11) Mabel Parilla spent the proceeds of the joint savings account on marital debts, and neither party shall claim an interest in said account proceeds." (Journal Entry dated October 7, 2004)
 {¶ 19} The court then addressed the remaining issues. The court found that property division and spousal support were controlled by the agreement. The court disagreed with Mabel's interpretation of the agreement and found that there was no indication that she was contractually entitled to payments from the pension equal to that of the $500 per month spousal support award she forfeited by getting married. The court also found that the testimony of Charles and his attorney regarding dates was more credible. The court concluded that the agreement entitled Mabel to a QDRO over the marital portion of Charles pension and to be named the sole beneficiary of his 401 (k) until April 26, 2010.
 {¶ 20} Mabel filed timely notice of appeal. Mabel challenged the decision of the court that rejected her interpretation of a prenuptial agreement and refused to order spousal support against Charles. Mabel claimed that the prenuptial agreement entitled *Page 3 
her to a monthly payment from Charles' pension in an amount equal to the spousal support she forfeited from her ex-husband as a result of her marriage to Charles. In the alternative, she urged that spousal support should have been awarded to her based upon the statutory considerations of R.C. 3105.18.
 {¶ 21} This court held that the prenuptial agreement did not entitle Mabel to restoration of her position before marriage. However, ordinary spousal support was not prohibited by the agreement and thus should have been considered under R.C. 3105.18. Because the trial court erroneously found that spousal support was prohibited by the agreement, this case was reversed and remanded for consideration of whether spousal support is reasonable and appropriate based upon the statutory factors.
 {¶ 22} On remand, the trial court reviewed the factors in R.C. 3105.08
and again found that Mabel was not entitled to spousal support. It is from this decision that Mabel now appeals.
 {¶ 23} As her sole assignment of error, Mabel claims:
 {¶ 24} "The trial court erred as a matter of law and abused its discretion in not awarding spousal support."
 {¶ 25} When reviewing an award of spousal support, an appellate court will not reverse the trial court's award absent an abuse of discretion.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218-219,450 N.E.2d 1140. Abuse of discretion connotes more than an error in judgment; it implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. Id. at 219.
 {¶ 26} R.C. 3105.18(C)(1) sets out the factors a court must consider when determining whether spousal support is appropriate and reasonable and when determining the amount and duration of spousal support. The factors are:
 {¶ 27} "(a) The income of the parties, from all sources, * * *;
 {¶ 28} "(b) The relative earning abilities of the parties;
 {¶ 29} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 30} "(d) The retirement benefits of the parties; *Page 4 
 {¶ 31} "(e) The duration of the marriage;
 {¶ 32} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 33} "(g) The standard of living of the parties established during the marriage;
 {¶ 34} "(h) The relative extent of education of the parties;
 {¶ 35} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 36} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 37} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 38} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 39} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 40} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 41} Notably, on remand, the trial court notes that in this court's prior opinion, Beverly v. Parilla, 165 Ohio App.3d 802, 2006-Ohio-1286, we engaged in considerable analysis of the statutory criteria but chose not to set an amount of spousal support, instead, remanding the matter for further consideration. The portion of the opinion to which the trial court is referring states:
 {¶ 42} "Here, appellant cites R.C. 3105.18 and urges that she is entitled to spousal support under the statutory factors relevant herein. She notes that she receives approximately $600 per month in Social Security and can barely pay her bills. She claims that she has no job prospects because she always held manual jobs and now has health *Page 5 
problems such as asthma and an injured heel. She points out that she quit her full-time job with benefits because appellee asked her to work on his tree farm. (It is noted that he paid off her nearly $9,000 residential mortgage in return for her assistance.) She has no education or job training. And she was 66 years old at the time of the divorce.
 {¶ 43} "She contrasts her situation with appellee's, noting that he has numerous income sources, such as a pension of almost $1,400 per month after taxes, approximately $1,400 per month in Social Security, and $1,800 per month in rental income (minus utilities and expenses) from his several properties. She also notes that he owns a tree farm with a $600 mortgage. And she opines that this farm has income potential.
 {¶ 44} "* * *
 {¶ 45} "Need can be considered in determining whether an award is reasonable and appropriate, but need is not the sole consideration or the threshold test. Olenik v. Olenik (Sept. 18, 1998), 7th Dist. No. 94CA139, 1998 WL 668162. Appellant's acts of providing appellee with a residence, quitting her job, and working on his tree farm are considerations. Her health and job potential are relevant, as is her age. The diversity in income and assets is of consequence. The short duration of the marriage is of negative significance to appellant. However, her forfeiture of spousal support and a year's worth of Social Security from her prior husband in order to marry appellee can be considered." Id. at ¶¶ 34-51.
 {¶ 46} In weighing these factors on remand, the trial court stated as follows:
 {¶ 47} "In this case, the most striking fact (also cited by the Appellate Court) is the short term of the parties' marriage.
 {¶ 48} "They were married on April 28, 2001 and separated about 20 months later in December of 2002. The divorce action was filed on May 31, 2003 and temporary support was ordered beginning May 1, 2003 and lasted for 18 months at the rate of $500 per month until October 1, 2004. As the Opinion of the Appellate Court recites, Mr. Parilla paid off nearly $9,000 on a residential mortgage of Mabel Parilla in return for her assistance on his farm. The payoff of the mortgage was actually worth more than $9,000 *Page 6 
when one considers the interest that was saved by the payoff, which would otherwise, accrued over the lifetime of the loan. At the invitation of the Court, the parties filed post-remand memorandums and in addition, the Plaintiff filed a Motion to Strike the Defendant's Memorandum.
 {¶ 49} "The law requires that a property division must first be made in a divorce case before the issue of spousal support can be considered. It seems fair here to point out that the Defendant entered into certain stipulations regarding the property settlement and allocation of indebtedness under the impression that he would have no obligation to pay spousal support because of the existence of the prenuptial agreement. When one considers the parties' stipulations and the Court's Decree of Divorce, it seems to this Court that the Plaintiff was well provided for when considering the short term of the marriage. It appears to the Court that the Defendant's willingness to enter into certain stipulations in connection with that property settlement was influenced by his assumption that no post-decree spousal support would be due from him. * * *" (Judgment Entry)
 {¶ 50} The trial court then goes on to explain that, because of the existence of the antenuptual agreement, Mabel was well aware that she would forfeit the spousal support and social security benefits from her prior marriage if she were to marry Charles. It appears that the court took this into consideration as a factor when it concluded that spousal support was not appropriate in this case.
 {¶ 51} Because these are all factors that may have been taken into consideration when making a determination whether to grant Mabel spousal support, and because the trial court is given such great latitude in making such a decision, we cannot say that the trial court abused its discretion in denying her request. Accordingly, Mabel's sole assignment of error is meritless and the judgment of the trial court is affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1