[Cite as *Cadle v. D'Amico*, 2016-Ohio-4747.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| MELVIN E. AND INA N. CADLE, | ) | CASE NO. 15 MA 0136 |
| | ) | |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| PAMELA G. D'AMICO, INDIVIDUALLY | ) | |
| AND AS TRUSTEE OF THE | ) | |
| TESTAMENTARY TRUSTS OF THE | ) | |
| WILL AND TESTAMENT OF PAUL J. | ) | |
| SUDIMAK, DECEASED, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas Probate Division of Mahoning
County, Ohio
Case No. 2013 CI 0006

JUDGMENT:     Affirmed.

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  June 27, 2016

[Cite as *Cadle v. D'Amico*, 2016-Ohio-4747.]
APPEARANCES:

For Plaintiffs-Appellants:

Atty. Eric C. Johnson
12 West Main Street
Canfield, Ohio 44406

Atty. David S. Barbee
Roth, Blair, Roberts, Strasfeld & Lodge
100 East Federal Street, Suite 600
Youngstown, Ohio 44503

For Defendants-Appellees:

Thomas G. Carey, Jr.
Harrington, Hoppe & Mitchell, Ltd.
108 Main Avenue S.W., Suite 500
Warren, Ohio 44481

[Cite as *Cadle v. D'Amico*, 2016-Ohio-4747.]

ROBB, J.

{¶1} Plaintiffs-Appellants Melvin and Ina Cadle appeal the decision of Mahoning County Probate Court declaring the October 28, 2008 "Assignment of Oil and Gas Lease" only assigns royalty rights and right to free gas for the residence associated with Sudimak No. 2 and Sudimak No. 3 wells. Appellants disagree with the trial court's conclusion and argue the assignment conveys all rights related to the October 28, 2008 lease, not just royalty rights to Sudimak No. 2 and Sudimak No. 3 wells. They contend any confusion or uncertainty as to the meaning of the assignment should be construed against Defendants-Appellees Pamela D'Amico, individually and as trustee of the testamentary trust of the last will and testament of Paul J. Sudimak, Barbara Gettman, Stephen H. Sudimak, Noreen Sudimak, Ellen Borchers, Anita Bell, and Petrine M. Lucarell.

{¶2} The issue before this court is what rights were granted to Appellants under the assignment. For the reasons expressed below, the probate court's decision was correct. The assignment only granted royalty rights to Sudimak No. 2 and Sudimak No. 3 wells along with right to free gas from those wells; it did not grant all rights and interests under the lease.

Statement of the Case

{¶3} In 1961, Joseph Kutsko, who owned approximately 168 acres north and south of Blott Road in North Jackson Township, Mahoning County, Ohio, entered into a lease (referred to as the "Kutsko Lease") with East Ohio Gas Company. The Kutsko Lease contained broad language; it allowed for "drilling, operating for, producing and removing oil and gas and all other constituents thereof, and of injecting, storing and holding in storage, and removing gas of any kind (sometimes herein referred to as gas storage purpose), including gas lying thereunder, by pumping through wells or other means, into, in and from any sands, strata or formations lying thereunder, regardless of the source of such gas or the location of the wells or other means of so doing, and of placing tanks, equipment and structure thereon to procure and operate for the said products, and of laying pipe lines

thereover to transport the same and for gas storage purposes on other lands" on the 168 acres.

**{¶4}** Paul J. Sudimak became owner of 90 acres of the original Kutsko property. Paul J. Sudimak not only acquired the surface rights, but he also acquired the mineral rights. Thus, he became the lessor under the Kutsko Lease.

**{¶5}** Paul J. Sudimak's 90 acres were split by Blott Road. Seventy acres were situated north of Blott Road and the remaining twenty acres were south of Blott Road. In the early 1970s two shallow wells were drilled on the property north of Blott Road. These wells were known as Sudimak No. 2 and Sudimak No. 3. Paul J. Sudimak received royalties from these wells; Sudimak No. 3 supplied free gas to a house located on the property.

**{¶6}** Paul J. Sudimak died in the mid-1980s. His will named Pamela D'Amico, his niece, executor. The will created three trusts – one for his son Robert, one for his son Paul, and one for his brother and sister-in-law Robert and Barbara Sudimak. D'Amico is the daughter of Robert and Barbara Sudimak.

**{¶7}** In the mid to late 1980s the estate sold the surface rights to the 90 acres in two separate transactions to individuals who are not parties to this action. It retained all the mineral rights to the 90 acres.

**{¶8}** Appellants acquired 20 acres south of Blott Road in 1986. Appellants acquired the 70 acres north of Blott Road in 2012.

**{¶9}** In 2008, Mr. Cadle approached Mrs. D'Amico, about either purchasing mineral interests or interests in the two wells; the parties dispute what their conversation was about. The parties negotiated and executed the October 28, 2008 assignment of lease. Appellants paid $2,250.00 and assignor, "Pamela G. D'Amico, trustee for the Paul Sudimak Trust" assigned its "interest in certain Oil & Gas Lease for the 'Sudimak #2 and #3 Well.'" 10/28/08 Lease.

**{¶10}** Concerns about the 2008 Assignment arose shortly after acquisition of the 70 acres. The oil and gas environment in Ohio had changed and deep well drilling was occurring. At some point in time, CNX Gas Company, LLC, sometimes

referred to as Consol, became the lessee on the Kutsko Lease. Two deep wells were drilled on the 90 acres.

**{¶11}** Allegedly, the initial concerns about the 2008 Assignment were that the Assignment only referenced one of the Sudimak trusts and what it actually granted to Appellants.

**{¶12}** Appellants filed a complaint and later amended complaints against Pamela D'Amico, individually and as trustee of the testamentary trusts of the will and estate of Paul J. Sudimak, Barbara Gettman, Stephen H. Sudimak, Noreen Sudimak, Ellen Borchers, Anita Bell, Petrine M. Lucarell, Jack Shaffer[1], Robert Sudimak, and CNX Gas Company seeking reformation and declaratory judgment. 2/21/13 Complaint; 7/24/13 First Amended Complaint; 1/9/14 Second Amended Complaint.

**{¶13}** Appellants sought reformation of the assignment because the assignment failed to correctly identify assignor. It stated assignor was "Pamela G. D'Amico, Trustee of the Paul Sudimak Trust;" however, that trust did not exist. D'Amico was the trustee for three separate trusts under the last will and testament of Paul J. Sudimak. Appellants asked for the Assignment to be reformed to indicate the assignor was D'Amico, trustee of the three separate trusts.

**{¶14}** The probate court granted the request. 7/29/15 J.E. Neither party finds fault with the probate court's decision to reform the Assignment to correct the name of the assignor.

**{¶15}** Appellants also sought a declaratory judgment. Appellants asserted the Assignment assigned them the right to receive royalties from the entire Kutsko Lease. At the time the suit was filed, Appellants were receiving the royalties from the shallow wells, Sudimak No. 2 and Sudimak No. 3. Appellants wanted a declaratory judgment indicating they were entitled to the royalties for any other wells drilled on the 90 acres that was subject to the Kutsko Lease. In the alternative, they asked the probate court to reform the assignment to indicate it conveyed all oil and gas rights

---

[1]Separate issues were raised regarding Schaffer. The probate court rendered a ruling on those issues. This appeal does not address those issues and no appeal concerning the probate court's judgment on those issues has been filed.

previously held by the trust with respect to the Kutsko Lease. Appellants contended reformation was available because it was a mutual mistake that the Assignment did not effectively convey all rights held by the trustee under the Kutsko Lease.

{¶16} Appellees answered and asserted the Assignment only assigned royalties and interests associated with the Sudimak No. 2 and Sudimak No. 3 wells. The Assignment did not grant Appellants interest and/or royalties associated with the entire Kutsko Lease.

{¶17} CNX answered and filed Counterclaim/Crossclaim for Interpleader. CNX indicated it had no interest in royalties other than the proper identity of the appropriate payee under the Kutsko Lease. 6/24/13 Interpleader.

{¶18} In December 2013, an agreement was reached between Appellants, Appellees, and CNX, and was memorialized in an agreed judgment entry. It was agreed CNX would "place into suspense any royalties or other payments that come due under the Lease. At the conclusion of the litigation, [CNX] will pay those royalties to the party that is determined to be the rightful successor-in-interest as lessor of the Kutsko Lease." 12/26/13 J.E.

{¶19} The case proceeded to trial. The primary issue was what did the language of the Assignment mean. Following trial, the probate court held:

> The "*Assignment of Oil and Gas Lease*" recorded on October 28, 2008 in <u>O.R. Book 5779, Page 1828</u> of *Mahoning County, Ohio Recorder's Office* only assigns royalty rights and rights to free gas to the residence associated with *Sudimak No. 2* and *Sudimak No. 3* wells also referred to as *Sudimak #2* and *Sudimak #3*. All other mineral rights remain under the control of **Pamela G. D'Amico**, Trustee of the **Robert E. Sudimak** and **Barbara Sudimak** *Trust*.

(Emphasis in original.) 7/29/15 J.E.

{¶20} Appellants timely appealed that decision.

Assignment of Error

"The trial court erred by holding that the lease rights assigned to the Appellants were limited to royalties produced from only the Sudimak #2 and #3 oil and gas wells."

**{¶21}** The issue in this case is what interest does the October 28, 2008 "Assignment of Oil & Gas Lease" assign to Appellants. The Assignment is a contract and thus, the principles of contract interpretation apply.

**{¶22}** When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). Review of an unambiguous written agreement is a matter of law for the court, which an appellate court reviews de novo. *Savoy Hosp., L.L.C. v. 5839 Monore St. Assocs., L.L.C.*, 6th Dist. No. L-14-1144, 2015-Ohio-4879, ¶ 30.

**{¶23}** If the language of the contract is ambiguous, the intent of the parties becomes a question of fact. *Id.* at ¶ 31, citing *Beverly v. Parilla*, 165 Ohio App.3d 802, 808, 2006-Ohio-1286, 848 N.E.2d 881, ¶ 26 (7th Dist.). Appellate courts will not reverse a factual finding of the trial court as long as it is supported by some competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶24}** A contract is considered ambiguous if the language is "unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning." *Beverly* at ¶ 24. If an ambiguity exists, courts are permitted to consider extrinsic evidence to determine the parties' intent. *Wells Fargo Bank, N.A. v. TIC Acropolis*, L.L.C., 2d Dist. No. 2015-CA-32, 2016-Ohio-142, ¶ 47. Extrinsic evidence includes the circumstances surrounding the parties at the time the contract was made and the objectives they intended to accomplish by entering the contract. *Oryann, Ltd. v. SL & MB, L.L.C.*,

11th Dist. No. 2014-L-119, 2015-Ohio-5461, ¶ 26. This includes consideration of the parties' negotiations. *Id.*, citing *Pharmacia Hepar, Inc. v. Franklin*, 111 Ohio App.3d 468, 475, 676 N.E.2d 587 (12th Dist.1996). If the parties' intent cannot be determined from consideration of extrinsic evidence, then the contract must be construed against the drafter. *Cocca Dev. Ltd. v. Mahoning Cty. Bd. of Commrs.*, 7th Dist. No. 12 MA 155, 2013-Ohio-4133, ¶ 10; *Michael A. Gerard, Inc. v. Haffke*, 8th Dist. No. 98488, 2013-Ohio-168, ¶ 14.

**{¶25}** With those principles in mind, we turn our attention to the language of the Assignment and the probate court's decision.

**{¶26}** The Assignment is titled, "Assignment of Oil & Gas Lease." It provides, in pertinent part, "Assignor [executor of the trusts] * * * hereby assign and transfer unto **MELVIN E. CADLE and INA M. CADLE**, * * * Assignor's interest in certain Oil & Gas Lease for the 'Sudimak #2 and #3 Well' located upon real property situated in the Township of Jackson, County of Mahoning and State of Ohio." (Emphasis in original.) 10/28/08 Assignment.

**{¶27}** The probate court found this Assignment only assigned royalty rights and right to free gas for the residence associated with the Sudimak No. 2 and Sudimak No. 3 wells. 7/29/15 J.E.

**{¶28}** Appellants disagree with the probate court's decision. They assert the reference to Sudimak No. 2 and No. 3 wells was not for purposes of any limitation, but rather was to identify which oil and gas lease was connected to the assignment. According to Appellants, the language employed does not clearly limit the assignment to only royalty interests in Sudimak No. 2 and Sudimak No. 3 wells. They provided this court with an example of a clear assignment that would have only assigned royalty interests in the Sudimak No. 2 and Sudimak No. 3 wells. Consequently, Appellants contend the language of the Assignment is ambiguous and the Assignment must be construed against the drafter, i.e. Appellees.

**{¶29}** Appellees assert the trial court's finding is correct. D'Amico only intended to convey royalty rights and not the full mineral rights. They contend her

testimony supports such position and there is no countervailing testimony from Appellants.

**{¶30}** The reason the parties are now disputing the language of the Assignment is a deep well was drilled on the 90 acres under the Kutsko Lease, and each party wants to collect the royalties from the deep well. Thus, simply put, the issue in this case is whether the Assignment is limited to the royalties from the Sudimak No. 2 and No. 3 wells, or are Appellants entitled to the royalties from any drilling on the 90 acres under the Kutsko Lease.

**{¶31}** The language of the assignment does not identify the lease it is referencing by the date it was signed, by attaching the lease, or by referring to it as the Kutsko Lease. Rather, Appellants are correct that the Assignment identifies the lease by referencing the Sudimak No. 2 and Sudimak No. 3 wells. Thus, the language "interest in certain Oil & Gas Lease for the 'Sudimak #2 and #3 Well'" is an identifying phrase. However, an identifying phrase may also be a limitation.

**{¶32}** The probate court did not expressly render a holding as to whether the Assignment was unambiguous or ambiguous. However, the trial court considered extrinsic evidence, which indicates it found the language was ambiguous and susceptible to more than one interpretation.

**{¶33}** Appellants assert that since the trial court found the Assignment was ambiguous, the Assignment must be construed against the drafter, Appellees, and accordingly they would be entitled to judgment in their favor. We disagree with such a proposition. Construing a contract against the drafter is a secondary rule of contract construction, and is applicable when the primary rules of contract construction, i.e. plain language of the document and extrinsic evidence, in that order, fail to clarify the meaning of the contract. *Carow v. Girton*, 4th Dist. No. 13CA13, 2014-Ohio-570, ¶ 15; *Michael A. Gerard, Inc.*, 2013-Ohio-168, ¶ 14, citing *Malcuit v. Equity Oil & Gas Funds, Inc.*, 81 Ohio App.3d 236, 240, 610 N.E.2d 1044 (9th Dist.1992); *In re Estate of Taris*, 10th Dist. No. 04AP-1264, 2005-Ohio-1516, ¶ 33 ("However, when parol evidence cannot elucidate the parties' intent, a court must apply the secondary rule of contract construction whereby the ambiguous language is

strictly construed against the drafter."); *Moyer v. Brown*, 11th Dist. No. 2001-T-0126, 2002-Ohio-4517, ¶ 22 (same); *S. Towne Centre, Inc. v. Burlington Coat Factory Warehouse of Dayton, Inc.*, 2d Dist. No. 14953, 1995 WL 628024, (Oct. 25, 1995); *Cline v. Rose*, 96 Ohio App.3d 611, 615 (3d Dist.1994) (same). Accordingly, the trial court acted properly when it considered extrinsic evidence.

**{¶34}** In reviewing the extrinsic evidence, we agree with the probate court's conclusion that the extrinsic evidence demonstrates it was the parties' intent to only assign the royalty rights and right to free gas for the residence associated with the Sudimak No. 2 and Sudimak No. 3 wells. D'Amico testified that consideration for the Assignment was predicated on royalties received from the Sudimak No. 2 and Sudimak No. 3 wells over the 18-month period prior to the execution of the Assignment. 5/28/15 Tr. 83-84. She indicated she did not initially know how to set the price, so she researched it. 5/28/15 Tr. 83. Her research indicated it was an 18-month moving average. 5/28/15 Tr. 83. The probate court indicated both D'Amico and Cadle acknowledged this was how the price for the Assignment was determined. 7/29/15 J.E.

**{¶35}** Had the assignment been intended to include additional interests subject to the Kutsko Lease, the price would have been higher. Appellees owned the mineral rights to 90 acres subject to the Kutsko Lease; 20 acres were south of Blott Road and 70 acres were north of Blott Road. Sudimak No. 2 and No. 3 were located on the 70 acres of land north of Blott Road. At the time of the Assignment, it does not appear there were any wells, deep or shallow, located on the 20 acres south of Blott Road. Considering there were another 20 acres of mineral rights owned by Appellees south of Blott Road subject to the Kutsko Lease, a higher price would have been computed if Appellees were assigning the mineral interest to the entire 90 acre tract, rather than just the portion where the Sudimak No. 2 and No. 3 wells were located. In other words, the price for the mineral interests Appellees owned would not have been computed solely from the royalties associated with the Sudimak No. 2 and No. 3 wells for the past 18 months if the assignment was intended to cover royalties for the entire 90 acres.

**{¶36}** Furthermore, in all of the transactions the trust entered into, it always maintained the mineral rights. When the trust sold land, it severed the mineral rights from the surface rights and only sold the surface rights. 5/28/15 Tr. 54-55, 76-77. D'Amico testified her uncle told her to retain the mineral interests because you never knew what they were worth. 5/28/15 Tr. 98. She also indicated when one surface right purchaser of the property north of Blott Road asked about purchasing the mineral interests, she told them it would cost them $50,000 more. 5/29/15 Tr. 75-76. The purchaser was unwilling or unable to pay that much so only the surface interest was sold. 5/28/15 Tr. 76.

**{¶37}** The above indicates the executor/trust has always intended to retain the mineral interest and royalty interest. If the trust was willing to sell the royalty interest of its entire mineral interest estate, then it would have asked a more competitive price; not a price based just on an 18 month average for two wells.

**{¶38}** However, it is acknowledged that following the Assignment, D'Amico closed the estate and filed a final accounting in mid-January 2008. 5/28/15 Tr. 63. The final accounting does not list the mineral interest as an asset of the estate. D'Amico Depo. at 22. She explained the mineral interest was not listed because it was never listed on any other document, "outside of being part of the property." D'Amico Depo. at 23. She was asked, for the time period after the estate was closed up until now, why she did not file an account with the probate court regarding the mineral interest. She explained:

> Because I did not feel that the mineral rights were part of the, no longer part of the trust because of the closure of the Trust. There were no more – there was no more income coming into the Trust; so therefore, the Trust could be closed.

> But the mineral rights were at that point dormant, and they would be addressed when needed to be addressed.

D'Amico Depo. at 22-23.

{¶39} Potentially one could argue the closing of the estate may indicate the trust had assigned its right to the royalties. However, the argument is weak when considering the evidence above supporting a finding the mineral interests were retained by the trust. Thus, the mineral interest is still an asset of the estate. The closure of the estate does not negate that finding. Furthermore, Appellants admit if drilling stopped and the Kutsko Lease lapsed, the trust could enter into a lease with another company and receive royalties. By their admission, Appellants' right to royalties is solely maintained upon the continual operation of the Kutsko Lease. The closing of the estate does not support Appellants' position that the Assignment transferred all royalty interest under the Kutsko Lease, not just royalty interests to Sudimak No. 2 and No. 3 wells.

{¶40} Considering all the above, there is competent credible evidence to support the probate court's decision that the Assignment only assigned royalty rights and right to free gas for the residence associated with Sudimak No. 2 and Sudimak No. 3 wells. The sole assignment of error lacks merit. The probate court's decision is affirmed.

Donofrio, P.J., concurs.

Waite, J., concurs.