OPINION
{¶ 1} Defendant, William Sears, appeals his convictions and sentences for possession of heroin and cocaine, which were entered on his no contest pleas after the trial court overruled Defendant-Appellant's motion to suppress evidence.
 {¶ 2} On the afternoon of February 28, 2005, while on routine patrol, Moraine police officer Jason Neubauer conducted a random license plate check on a vehicle traveling south on State Route 4. Officer Neubauer discovered that the operator's license issued to the registered owner, Eric Orman, had been suspended. Because the person driving the vehicle appeared to match Orman's description, Officer Neubauer initiated a traffic stop of the vehicle.
 {¶ 3} Four people were inside the vehicle. Defendant Sears and a female were in the back seat. Two males were in the front seat. Mr. Metzger was the driver, and Eric Orman, the registered owner was in the front passenger seat.
 {¶ 4} While examining Mr. Metzger's drivers license, which appeared to be facially valid, Officer Neubauer observed Defendant reach down toward the floor with his left hand. Unable to see what Defendant might have in his hand, Officer Neubauer ordered Defendant to show his hands. At the hearing on Defendant's motion to suppress, Officer Neubauer gave the following responses to the prosecutor's questions:
 {¶ 5} "Q. What were your concerns, Officer, at that point?
 {¶ 6} "A. That he's possible reaching for a weapon.
 {¶ 7} "Q. Okay. And what did you order the defendant to do?
 {¶ 8} "A. To show me his hands.
 {¶ 9} "Q. Did he comply at first?
 {¶ 10} "A. No, he did not.
 {¶ 11} "Q. And did you tell him again?
 {¶ 12} "A. Yes, I did.
 {¶ 13} "Q. What were your concerns when he didn't comply at first?
 {¶ 14} "A. That he was still going to reach for his weapon.
 {¶ 15} "Q. So what did you do at that point, Officer?
 {¶ 16} "A. I placed myself on the rear right passenger side and I called for backup and waited until my backup responded, and I kept him in view." (T. p. 8).
 {¶ 17} After back-up he had requested arrived, Officer Neubauer ordered Defendant to exit the vehicle and conducted a pat down frisk of Defendant for weapons. Officer Neubauer felt two oblong objects protruding from Defendant's coat pocket. Officer Neubauer could see that the objects appeared to be spoons, and he asked Defendant what the objects were. Defendant replied that they were spoons, which he had used to eat with. Officer Neubauer asked Defendant for permission to remove the spoons from his pocket and Defendant agreed.
 {¶ 18} Upon removing the spoons, Officer Neubauer observed a white powdery residue and charring marks on the back of the spoons. Because those marks and residue indicated the use of the spoons in drug activity, Officer Neubauer placed Defendant under arrest for possession of drug paraphernalia. Officer Neubauer then conducted a more thorough search of Defendant's person incident to his arrest and discovered heroin and cocaine capsules in Defendant's sock.
 {¶ 19} Defendant was indicted on one count of possession of heroin, R.C. 2925.11(A), and one count of possession of less than five grams of cocaine (not crack form), R.C. 2925.11(A). Defendant filed a motion to suppress the evidence, which the trial court overruled following a hearing. Defendant subsequently entered pleas of no contest to both charges and was found guilty. The trial court sentenced Defendant to concurrent six month prison terms.
 {¶ 20} Defendant timely appealed to this court. He challenges only the trial court's decision overruling his motion to suppress the evidence.
FIRST ASSIGNMENT OF ERROR
 {¶ 21} "The trial court erred when it overruled Defendant-Appellant's motion to dismiss/motion to suppress evidence obtained as a result of a unlawful seizure."
 {¶ 22} Defendant does not contend that the initial stop of this vehicle was unlawful. Defendant argues, however, that once Officer Neubauer determined that the driver of the vehicle was not the registered owner whose operator's privileges had been suspended, and that the driver had a valid driver's license, the reasonable suspicion that justified this investigatory stop dissipated. Therefore, the continued detention of the vehicle and its occupants and all that transpired thereafter, including the patdown frisk of Defendant, was unlawful and any evidence obtained as a result should have been suppressed. We disagree.
 {¶ 23} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889. A police officer may briefly detain an individual in order to investigate possible criminal activity. Id. To justify such an investigatory detention, an officer must be able to point to specific, articulable facts which when taken together with the rational inferences from those facts, reasonably warrant the intrusion. Id.
 {¶ 24} Whether reasonable suspicion of criminal activity exists is determined by reviewing the totality of the facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. Those circumstances must be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Andrews (1991), 57 Ohio St.3d 86. A reviewing court must give due weight to the training and experience of the officer, and view the evidence as it would be understood by those in law enforcement. Id.
 {¶ 25} A traffic stop must comply with the Fourth Amendment's reasonableness requirement. Whren v. United States (1996).517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89. The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the stop, absent some specific and articulable facts that further detention was reasonable. State v. Brown
(July 30, 2004), Montgomery App. No. 20336, 2004-Ohio-4058;State v. Chatton (1984), 11 Ohio St.3d 59; State v. Ramos,155 Ohio App.3d 396, 2003-Ohio-7535.
 {¶ 26} When he stopped the vehicle, Officer Neubauer knew that the registered owner did not have a valid driver's license and believed the person driving the vehicle might be its owner. Unquestionably, Officer Neubauer was justified in stopping this vehicle to investigate whether the owner was driving the vehicle without a valid license. However, once Officer Neubauer determined that the registered owner was not the driver and that the driver had a valid license, the reasonable suspicion justifying this investigatory stop evaporated and further detention of the vehicle and its occupants could only be justified by a reasonable, articulable suspicion of other criminal activity. Chatton, supra; State v. Robinette,80 Ohio St.3d 234, 1997-Ohio-3443.
 {¶ 27} Terry employs a functional distinction between suspicion of criminal activity and suspicion that a detainee is armed and dangerous in explaining what an officer is authorized to do in each instance. With respect to continuation of detention, the distinction blurs, because the potential of attack likewise portrays possible criminal activity. Defendant's furtive, suspicious movements during this traffic stop, reaching down toward the floor of the vehicle, when viewed through the eyes of Officer Neubauer and giving proper weight to his training and experience, provided that reasonable suspicion of other criminal activity that justified continuing the detention of this vehicle beyond the point where the original reason for the stop had been resolved. State v. Bobo.
 {¶ 28} Defendant argues that Officer Neubauer was obligated to terminate the detention the moment he resolved his initial suspicions that the driver lacked operator's privileges. However, the record indicates that Defendant reached down toward the floor of the vehicle while Officer Neubauer was preoccupied with the driver, examining his license. Officer Neubauer could not see what was in Defendant's hand, and when Officer Neubauer ordered Defendant to show his hands Defendant did not immediately comply but rather had to be told repeated times to show his hands. Officer Neubauer's safety concerns that Defendant might be reaching for a weapon were reasonable and supported by specific, articulable facts. Accordingly, Officer Neubauer was justified in continuing the detention of this vehicle to investigate whether Defendant might be armed and dangerous, and in ordering Defendant to exit the vehicle, Pennsylvania v. Mimms (1977),434 U.S. 106, and patting him down for weapons. Terry v. Ohio, supra.
 {¶ 29} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 30} "The trial court erred when it overruled the Defendant-Appellant's motion to dismiss/motion to suppress evidence obtained as a result of an unlawful search which fell outside of the proper scope of a Terry Patdown."
 {¶ 31} Defendant argues that even if there was sufficient reasonable suspicion to justify patting him down for weapons, the removal of the spoons from his coat pocket exceeded the proper scope of a Terry weapons frisk. Defendant additionally argues that the spoons could not lawfully be seized pursuant to the "plain feel" doctrine, Minnesota v. Dickerson (1993),508 U.S. 366, 113 S.Ct. 2130, because the incriminating nature of those objects as contraband was not immediately apparent to Officer Neubauer through his sense of touch. Specifically, it was not until Officer Neubauer removed the spoons from Defendant's pocket and observed the white powdery residue and char marks on them that he associated them with drug activity and recognized their incriminating character as contraband. It was Defendant's arrest for possession of this drug paraphernalia that gave rise to a more thorough search of his person incident to his arrest,Chimel v. California (1969), 395 U.S. 752, which in turn produced the drugs that form the basis for the charges in this case.
 {¶ 32} Under Terry, an officer is entitled to conduct a limited patdown search of a suspect's outer clothing for weapons if the officer reasonably believes that the suspect might be armed and a danger to the safety of the officer or others. Id.
at 28. The officer need not believe that the suspect probably is armed. The test is whether, because of the possibility that the suspect is armed, a reasonably prudent person under the circumstances would be warranted in the belief that his safety or the safety of others was in danger. Id., at 27. A Terry
weapons frisk must be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden weapons which may be used to assault the officer. Id. It cannot be used as a pretext to search for contraband or evidence of a crime. State v. Evans, 67 Ohio St.3d 405, 1993-Ohio-186.
 {¶ 33} As we previously concluded, Defendant's furtive, suspicious movements inside the vehicle created a reasonable suspicion that he might be armed and posed a danger to the officers. Thus, Officer Neubauer was justified in patting Defendant down for weapons. During that patdown Officer Neubauer felt two oblong objects in Defendant's coat pocket. The objects were protruding somewhat, and Officer Neubauer could see that they appeared to be spoons. He later testified that he suspected the spoons were involved in "drug use." (T. 10). Officer Neubauer asked Defendant what the objects in his pocket were and Defendant replied that they were spoons he had used to eat with. Officer Neubauer asked Defendant if he could remove the spoons from his pocket and Defendant said "yes."
 {¶ 34} Searches conducted outside the judicial process, by officers lacking a prior judicial warrant, are per se unreasonable, subject to a few specifically established exceptions. Katz v. United States (1967), 389 U.S. 347. The burden is on the party seeking an exemption from the constitutional process to show the need for it. Chimel v.California (1969), 395 U.S. 752. Where the exemption on which the State relies involves consent, the State bears the burden to prove that consent was freely and voluntarily given. Bumper v.North Carolina (1968), 391 U.S. 543.
 {¶ 35} The trial court rejected the State's claim that Defendant consented to the removal of the spoons from his pocket, holding that the consent he gave was not voluntary but was invalid because Defendant had been removed by police from the vehicle and he was holding his hands on top of his head. However, the trial court found that Officer Neubauer's removal of the spoons from Defendant's coat pocket was nevertheless proper because the spoons were metal and could be used as a weapon.
 {¶ 36} An officer performing a pat-down search for weapons is not required to know that an object he locates is a weapon in order to seize it. He need only reasonably suspect that it is a weapon. The potential of its use is what justifies the seizure. Officer Neubauer testified that he knew the two articles he saw protruding from Defendant's pocket were spoons. (T. 21). Spoons lack the properties of a weapon. That the Defendant might use them for that purpose because they were metal, as the trial court found, is necessarily speculative. Officer Neubauer made no such assertion. However, and even if the trial court may have erred in its conclusion, we believe that the consent on which the State relied was a valid basis for the seizure of the spoons from Defendant's coat pocket, and that the trial court erred when it found that the consent Defendant gave was involuntary.
 {¶ 37} Whether consent is in fact voluntary or the product of duress or coercion, either express or implied, is a question of fact to be determined from the totality of the facts and circumstances. Schneckloth v. Bustamonte (1973), 412 U.S. 218,93 S.Ct. 2041, 36 L.Ed.2d 854. Knowledge of the right to refuse consent is not a prerequisite to establishing voluntary consent, but is a relevant factor to be taken into account. Consent to a search that is obtained by threats or force, or granted only in submission to a claim of lawful authority, is invalid. Id. Such "lawful authority" is an express or implied false claim by police that they can immediately proceed to make the search in any event. Bumper v. North Carolina.
 {¶ 38} A suspect's expression of consent to perform a warrantless search of his person is not involuntary because he calculates that it is in his best interests to consent. It is involuntary because it is coerced; that is, the product of compulsion arising from physical force or a threat of physical force.
 {¶ 39} While the officers in this case did exercise some authority or control over Defendant by ordering him out of the vehicle for safety reasons, which they were entitled to do,Mimms, supra, and by patting him down for weapons, Defendant was not under arrest at that time, and the control exercised by the officers was no more than that inherent in those minimally intrusive procedures. That Defendant was told to stand with his hands on his head increased his sense of vulnerability, but is not inherently coercive. Furthermore, Officer Neubauer's asking Defendant if he could remove the spoons from his pocket is not coercive or threatening, and there is nothing in this record that indicates Defendant's consent was given in response to a claim by Officer Neubauer that he had the lawful authority to remove the spoons in any event. On this record, the State met its burden to demonstrate the exception to the warrant requirement on which it relied, that Defendant had voluntarily consented to the removal of the spoons from his pocket.
 {¶ 40} Once the spoons were removed from Defendant's pocket and Officer Neubauer observed a white powdery residue on them and charring or burn marks on the back, he had probable cause to arrest Defendant for possession of drug paraphernalia, because those facts indicated that the spoons had been used in drug activity. Having lawfully arrested Defendant, Officer Neubauer could conduct a thorough search of his person incident to that arrest. Chimel, supra. The trial court did not err in overruling Defendant's motion to suppress evidence that police seized.
 {¶ 41} The second assignment of error is overruled. The judgment of the trial court will be affirmed.
Young, J., concurs.
Hon. Frederick N. Young, Retired from the Court of Appeals, Second District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
Donovan, J., dissents.