[Cite as *State v. Miller*, 2012-Ohio-1901.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO, : 

     Plaintiff-Appellant, :   Case No.  11CA3217

     vs. : 

SCOTT MILLER, :   DECISION AND JUDGMENT ENTRY

     Defendant-Appellee. : 

_____

APPEARANCES:

COUNSEL FOR APPELLANT:     Sherri Rutherford, Law Director, and Michele R. Rout,
                                 Assistant Law Director, 97 West Main Street, Chillicothe,
                                 Ohio 45601

COUNSEL FOR APPELLEE:     James T. Boulger, 2 West Fourth Street, Chillicothe, Ohio
                                 45601

_____

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 4-17-12

ABELE, P.J.

{¶ 1}   This is an appeal from a Chillicothe Municipal Court judgment that granted the

motion to suppress evidence filed by Scott Miller, defendant below and appellee herein.

{¶ 2}   The State of Ohio, plaintiff below and appellant herein, assigns the following error for

review:

> "THE TRIAL COURT ERRED IN GRANTING THE MOTION TO
> SUPPRESS, AS THE SEARCH OF THE DEFENDANT'S PERSON
> WAS A LAWFUL CONSENSUAL SEARCH, OR IN THE
> ALTERNATIVE WAS A PROBABLE CAUSE SEARCH OF THE
> DEFENDANT."

{¶ 3}   On August 29, 2009, Trooper Benjamin R. Seabolt observed a vehicle with a

windshield defect.   After Trooper Seabolt pursued the vehicle, the vehicle pulled into a parking space at a gas station convenience store.   At this point the front seat passenger began to exit the vehicle.   Trooper Seabolt stopped his cruiser behind the vehicle and directed the passenger to remain in the vehicle.

{¶ 4}   Trooper Seabolt approached the driver and requested identification from the driver and the passengers.   After Trooper Seabolt discovered that the license plates had expired and that the driver's license had been suspended, he placed the driver in the cruiser and engaged him in a conversation.   The trooper informed the driver that he could arrest him for driving without a valid driver's license and also asked him if there was "anything in the vehicle that [the trooper] should know about."   The driver eventually indicated that the front seat passenger had marijuana.

{¶ 5}   Trooper Seabolt thereupon approached the front seat passenger (appellee) and directed him to "hop out here" and follow him to the patrol cruiser.   Trooper Seabolt then asked appellee if he had anything that the trooper "should know about."   Appellee's response is not audible.   Trooper Seabolt then asked appellee if he could pat down appellant.   Appellee's response is again inaudible.   After Trooper Seabolt patted appellee down, he asked him what was in his pockets.   Appellee removed a pack of cigarettes from one pocket and a cell phone from another.   Trooper Seabolt then asked appellee what else was in his pocket, and appellee removed a small plastic bag that contained several pills of Diazepam.   Trooper Seabolt then arrested appellee for drug abuse, and a subsequent search incident to arrest revealed marijuana.

{¶ 6}   On January 5, 2010, appellee was charged with (1) minor misdemeanor possession of marijuana in violation of R.C. 2925.11(C)(3)(a); and (2) first degree misdemeanor possession of drugs in violation of R.C. 2925.11(C)(2).   On February 24, 2010, appellee filed a motion to suppress evidence.   Appellant argued that Trooper Seabolt did not have a lawful justification to

detain him.

**{¶ 7}**   On June 8, 2010, the trial court issued an order that noted that appellee and the prosecution had "offered a brief stipulation regarding the rationale for detention" and that they had submitted a videotaped recording of the traffic stop and encounter for the court to review. Appellee had informed the court that he wished to present "a specific legal issue" and that he and the prosecution had agreed to brief the issue.   The court stated that it had "ordered a briefing schedule, which neither counsel observed."   The court nonetheless reviewed the videotape but found "it no help whatsoever on the issue of suppression without further explanation.   The Court cannot determine what happened or when by reviewing the video and the audio is of no assistance as regard to time frame either."   The court thus set the matter for a simultaneous trial and suppression hearing.

**{¶ 8}**   On October 19, 2010, appellee filed a "supplemental memorandum in support of motion to suppress."   Appellee argued that: (1) the trooper lacked any reason to initially detain appellee; (2) appellee did not consent to the pat down search; and (3) even if appellee did consent to the pat down search, the trooper exceeded the scope of appellee's consent when he requested appellee to remove items from his pockets.   In response, the prosecution asserted that appellee's initial detention was lawful because he was a passenger in a car that the trooper had lawfully detained.   The prosecution further asserted that the trooper possessed probable cause to search appellee based upon the driver's statement that appellee possessed contraband.

**{¶ 9}**   The parties agreed to submit stipulated exhibits to the trial court: (1) a videotape of the traffic stop; and (2) the trooper's written statement of facts.   Consequently, the court did not conduct an evidentiary hearing.   Instead, the court reviewed the videotape and the trooper's statement of facts.

{¶ 10} According to Trooper Seabolt's written statement, the trooper had been traveling west on Pleasant Valley Road directly behind a purple 1997 Dodge Neon. After a LEADS check revealed that the license plates had expired, Trooper Seabolt decided to stop the vehicle. Trooper Seabolt pulled his cruiser behind the vehicle in a gas station parking lot. Trooper Seabolt requested identification from all occupants and placed the driver in the cruiser. A LEADS check on the driver and passengers revealed that the driver was under a license suspension. The driver also advised the trooper that the vehicle contained marijuana. The trooper requested appellee to exit the vehicle and he:

> "performed a consent pat down for weapons of his person. While conducting this I was able to feel a large bulge in his right front pocket that had a grinding feel to it as my hand went over. I asked him what he had in his pocket and he replied that it was cigarettes. He then removed a cigarette pack from his pocket. The bulge was still visible in his pocket and I asked him what else was there. He then admitted that he had pills in his pocket and removed a baggie that had a folded dollar bill in it and handed it to me. The baggie was opened and contained 82 pills marked (MYLAN 345). The pills were identified by their markings as Diaz[e]pam * * *."

After Trooper Seabolt arrested appellee, a subsequent search incident to arrest "revealed a bulge in his crotch and he admitted to having a baggie of marijuana in his underwear."

{¶ 11} On February 18, 2011, the trial court granted appellee's motion to suppress evidence. The court found that the initial detention was lawful, but that "the manner in which Trooper Seabolt yelled at [appellee] to get back into the car is a substantial factor in determining whether any search of [appellee] was consensual." The court then determined that Trooper Seabolt exceeded the scope of a pat down search for weapons. The court thus stated that for the search to have been lawful, appellee must have consented to it.[1] The trial court determined that

---

[1] The court did not clarify whether the trooper's pat down search was justified from its inception as either a consent search or a lawful pat down search for weapons. Instead, the court appears to have assumed that the trooper was justified in patting down appellee, but determined that the trooper exceeded the scope of a lawful pat down search for weapons.

appellee did not consent and explained: "Given the nature in which [appellee] initially was ordered back in the car, removed from the vehicle by Trooper Seabolt, not advised of his right to refuse to consent to the search by the officer, the Court finds that [appellee] did not consent to the search and was coerced into removing the contraband from his pocket."   This appeal followed.

{¶ 12}  In its sole assignment of error, the appellant asserts that the trial court erred by granting appellee's motion to suppress evidence.   In particular, the prosecution argues that Trooper Seabolt's search of the appellee did not violate the Fourth Amendment prohibition against unreasonable searches because: (1) appellee consented to the search; or (2)   the trooper possessed probable cause to search appellee.

A

STANDARD OF REVIEW

{¶ 13}  Initially, we note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact.   See State v. Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶100; State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1.   When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility.   See, e.g., Roberts at ¶100.   Accordingly, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings.   See, e.g., id.; State v. Medcalf (1996), 111 Ohio App.3d 142, 145, 675 N.E.2d 1268.   The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case.   See Roberts at ¶100.   See, generally, Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.

B

FOURTH AMENDMENT

{¶ 14} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures.   See, e.g., Delaware v. Prouse (1979), 440 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 660.   "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions."   Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576.   Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible.   See Roberts at ¶98; Maumee v. Weisner (1999), 87 Ohio St.3d 295, 297, 720 N.E.2d 507; Xenia v. Wallace (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.

C

CONSENT

{¶ 15} One well-established exception to the warrant requirement is the consent search. Thus, no Fourth Amendment violation occurs when an individual voluntarily consents to a search. See United States v. Drayton (2002), 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242 (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); State v. Comen (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640.   Consent to a search is "a decision by a citizen not to assert Fourth Amendment rights."   Katz, Ohio Arrest, Search and Seizure (2004 Ed.), Section 17:1, at 341.   In Schneckloth, the United States Supreme Court acknowledged the importance of consent searches in police investigations and noted that "a valid consent may be the only means of

obtaining important and reliable evidence" to apprehend a criminal.   Id. at 227-228.

{¶ 16}  "'[C]onsent [to search] may be implied by the circumstances surrounding the search, by the person's prior actions or agreements, or by the person's failure to object to the search.'"   State v. Lane, Montgomery App. No. 21501, 2006-Ohio-6830, ¶40, quoting Kuras, et al., Warrantless Searches and Seizures (2002), 90 Geo.L.J. 1130, 1172.   "'Thus, a search may be lawful even if the person giving consent does not recite the talismanic phrase: "You have my permission to search."'"  Id., quoting United States v. Better-Janusch (C.A.2, 1981), 646 F.2d 759, 764.

{¶ 17}  A court that is determining whether a defendant voluntarily consented to a search must consider the totality of the circumstances.   United States v. Drayton (2002), 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242; United States v. Watson (1976), 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598.   Some important factors for a court to consider include: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law"; and (7) the suspect's education and intelligence.   See Watson, 423 U.S. at 424-425; State v. Fry, Jackson App. No. 03CA26, 2004-Ohio-5747, ¶23; State v. Riggins, Hamilton App. No. C-030626, 2004-Ohio-4247, ¶15; see, also, State v. Sanchez (Apr. 24, 1998), Greene App. No. 97CA32 (stating that six factors court must consider are "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendants belief that

no incriminating evidence will be found.") (citations and internal quotations omitted).

{¶ 18} Although an individual's awareness of the right to refuse consent is a factor under the totality of the circumstances test, it "is not a prerequisite of a voluntary consent." Schneckloth, 412 U.S. at 234. Thus, the state need not establish such knowledge "as the sine qua non of an effective consent." Id.; see, also, Drayton, 536 U.S. at 206-207. "The Court has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search." Id. at 206 (citing Ohio v. Robinette (1996), 519 U.S. 33, 39-40, 117 S.Ct. 417, 136 L.Ed.2d 347; Schneckloth, 412 U.S. at 227). "Nor do this Court's decisions suggest that even though there are no per se rules, a presumption of invalidity attaches if a citizen consented without explicit notification that he or she was free to refuse to cooperate. Instead, the Court has repeated that the totality of the circumstances must control, without giving extra weight to the absence of this type of warning. See, e.g., Schneckloth, supra; Robinette, supra." Id. at 207.

{¶ 19} Furthermore, an officer's request for an individual's consent does not render consent involuntary. State v. Rose, Highland App. No. 06CA5, 2006-Ohio-5292, ¶39. "'While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.'" Drayton, 536 U.S. at 205 (quoting INS v. Delgado (1984), 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247). However, consent to a search that is "coerced by threats or force, or granted only in submission to a claim of lawful authority," is invalid. Schneckloth, 412 U.S. at 233. Such "lawful authority" is a law enforcement officer's express or implied false claim that the officer can immediately proceed to make the search regardless of consent. See State v. Sears, Montgomery App. No. 20849, 2005-Ohio-3880, ¶37, citing Bumper v. North Carolina (1968), 391 U.S. 543, 88

S.Ct. 1788, 20 L.Ed.2d 797 (holding that consent not valid when obtained after law enforcement officer stated that he had a warrant to search).

{¶ 20} Moreover, "[a] suspect's expression of consent to perform a warrantless search of his person is not involuntary because he calculates that it is in his best interests to consent.   It is involuntary because it is coerced; that is, the product of compulsion arising from physical force or a threat of physical force."   State v. Sears, Montgomery App. No. 20849, 2005-Ohio-3880, ¶38.

{¶ 21} Additionally, although an individual's custodial status is a relevant factor in the totality of the circumstances analysis, "the fact of custody alone has never been enough in itself to demonstrate a coerced * * * consent to search."   Watson, 423 U.S. at 424.   "Even suspects who are handcuffed may voluntarily consent to a search."   State v. Riggins, Hamilton App. No. C-030626, 2004-Ohio-4247, ¶18, citing United States v. Crowder (C.A.6, 1995), 62 F.3d 782, 788.

{¶ 22} The state has the burden to prove, by "clear and positive" evidence, not only that the necessary consent was obtained, but that it was freely and voluntarily given.   Florida v. Royer (1983), 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229; Bumper v. North Carolina (1968), 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797; State v. Posey (1988), 40 Ohio St.3d 420, 427, 534 N.E.2d 61.   "Clear and positive evidence" is the substantial equivalent of clear and convincing evidence.   State v. Ingram (1992), 82 Ohio App.3d 341, 346, 612 N.E.2d 454.   The Ohio Supreme Court has defined "clear and convincing evidence" as follows:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.   It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."

{¶ 23} In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23; see, also, State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.   In reviewing whether the lower

court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. If the lower court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id.

{¶ 24} Ordinarily, the issue of whether an individual voluntarily consented to a search is a question of fact, not a question of law. See State v. Fry, Jackson App. No. 03CA26, 2004-Ohio-5747, at ¶21, citing Ohio v. Robinette (1996), 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347; Schneckloth, 412 U.S. at 227; State v. Southern (Dec. 28, 2000), Ross App. No. 00CA2541.[2] Because a reviewing court should generally defer to a trial court when it acts as the trier of fact, an appellate court should generally defer to a trial court's finding regarding whether a defendant voluntarily consented to a search. Fry at ¶21. Thus, appellate courts generally review trial court findings that a defendant voluntarily consented to a search under the weight of the evidence standard set forth in State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. See Fry. Even though the state's burden of proof is "clear and convincing," this standard of review is highly deferential and the presence of "some competent, credible evidence" to support the trial

---

[2] In Southern, we questioned whether the voluntariness of an individual's consent to search should be a question of fact, but ultimately decided that we must follow the Ohio Supreme Court's pronouncement on the issue. We stated: "We are tempted to question whether voluntariness in reality presents a factual issue requiring deferential review. See, e.g., Arizona v. Fulminate (1991), 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (the ultimate issue of voluntariness in a confession context is a legal question) and O'Day v. Webb (1972), 29 Ohio St.2d 215, 219, 280 N.E.2d 896 (simply because a question of law involves consideration of the facts does not turn it into a question of fact). See, also, Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68, 430 N.E.2d 935. Nonetheless, we are duty bound to follow Ohio v. Robinette, supra, and State v. Robinette, * * *." This sentiment seems especially appropriate in the case sub judice, where there really are no factual issues to resolve but only whether those facts demonstrate voluntary consent. Typically, whether facts satisfy a legal standard constitutes a question of law.

court's finding requires us to affirm it.  Schiebel.  Moreover, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.  State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.  This principle applies to suppression hearings as well as to trials.  See Fry at ¶22, citing State v. Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583.  "The 'rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'"  In re J.Y., Miami App. No. 07–CA–35, 2008–Ohio–3485, ¶33, quoting Seasons Coal Co., Inc. v. City of Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

{¶ 25} Although as we point out supra the voluntariness of consent is ordinarily a question of fact reserved to the trial court, reviewing courts have on occasion disagreed with a trial court's determination regarding a defendant's voluntary consent.  See Sears, supra; State v. Christopher, Clermont App. No. CA2009-08-041, 2010-Ohio-1816, ¶11 (disagreeing with trial court's conclusion that defendant did not voluntarily consent to search).  Cf. State v. Lovins, Montgomery App. No. 23530, 2010-Ohio-3916 (noting that state had not asserted consent as basis for search during trial court proceedings but nonetheless independently reviewing the evidence and finding that defendant consented).  Furthermore, in the case sub judice the trial court did not actually conduct an evidentiary hearing regarding the motion to suppress.  Consequently, the court did not hear or see any witnesses and, consequently, did not have the opportunity to assess the credibility of any witness.  One of the primary reasons that we generally defer to a trial court when it acts as the fact finder is because of its superior position to assess witness credibility.  Consequently, in the case at bar we need not completely defer to the trial court's finding that appellee did not voluntarily consent to the search.  Rather, because we are reviewing the same stipulated evidence

in the same manner as the trial court, we find it appropriate to afford less deference to the trial

court's finding regarding appellee's voluntary consent.   Once again, had this been a case of

conflicting witness testimony (e.g. appellee stated he did not consent while the law enforcement

officer stated that he did), we would have, in all likelihood, deferred to the trial court's resolution

of the conflicting testimony.

{¶ 26} In Sears, for example, the appellate court did not defer to the trial court's finding

regarding the defendant's consent to a search.   The trial court had rejected the state's argument

that the defendant voluntarily consented to the search.   The trial court determined that the

defendant's consent was not voluntary when the law enforcement officers removed him from the

vehicle and when the defendant was holding his hands on top of his head.   The trial court

nevertheless concluded that the search was a proper pat down search for weapons and that the

officer was entitled to remove the items from the defendant's pockets because the officer could

have believed the items were a weapon.

{¶ 27} In disagreeing with the trial court's finding that the defendant did not consent to the

search of his pockets, the appellate court explained:

> "While the officers in this case did exercise some authority or control over
> Defendant by ordering him out of the vehicle for safety reasons, which they were
> entitled to do, Mimms, supra, and by patting him down for weapons, Defendant was
> not under arrest at that time, and the control exercised by the officers was no more
> than that inherent in those minimally intrusive procedures.   That Defendant was
> told to stand with his hands on his head increased his sense of vulnerability, but is
> not inherently coercive.   Furthermore, Officer Neubauer's asking Defendant if he
> could remove the spoons from his pocket is not coercive or threatening, and there is
> nothing in this record that indicates Defendant's consent was given in response to a
> claim by Officer Neubauer that he had the lawful authority to remove the spoons in
> any event.   On this record, the State met its burden to demonstrate the exception to
> the warrant requirement on which it relied, that Defendant had voluntarily
> consented to the removal of the spoons from his pocket."

Id. at ¶39.

{¶ 28} After our review of the stipulated evidence submitted in the case sub juice, we disagree with the trial court's conclusion that the appellee did not voluntarily consent to the search.[3]   The trial court relied upon the following factors to determine that appellee did not consent: (1) the trooper ordered appellee to remain in the vehicle; (2) the trooper removed appellee from the vehicle; and (3) the trooper did not advise appellee of his right to refuse.   With respect to the first of these factors, the trooper was entirely justified to order appellee to remain in the vehicle.   As the United States Supreme Court has recognized, traffic stops carry inherent dangers and law enforcement officers are entitled to exercise authority over the driver and any passengers in order to maintain a sense of safety.   See Arizona v. Johnson (2009), 555 U.S. 323, 330, 129 S.Ct. 781, 172 L.Ed.2d 694 (recognizing that "traffic stops are 'especially fraught with danger to police officers'" and that "'"[t]he risk of harm to both the police and the occupants [of a stopped vehicle] is minimized * * * if the officers routinely exercise unquestioned command of the situation."'") (internal quotations and citations omitted).   Thus, the trooper's command that appellee remain in the vehicle does not constitute a coercive or threatening act.

{¶ 29} The second factor that the trial court relied upon (that the trooper removed appellee from the vehicle) is not supported by the stipulated evidence.   Instead, the videotape reveals that

_____

[3] Although the trial court did not clearly explain whether it considered the validity of the pat down search from its inception, we observe that even if appellee did not consent to the pat down search, the trooper was justified in patting appellee down for weapons.   We and the Ohio Supreme Court have previously recognized that the right to frisk is virtually automatic when drugs are suspected.   See State v. Evans (1993), 67 Ohio St.3d 405, 413, 618 N.E.2d 162; State v. Kelley, Ross App. No. 10CA3182, 2011-Ohio-3545; State v. Abernathy, Scioto App. No. 07CA3160, 2008-Ohio-2949; see, also, State v. Thompson, Hamilton App. No. C-050400, 2006-Ohio-4285, ¶11 (stating that "[t]he very nexus between drugs and guns can create a reasonable suspicion of danger to the officer: and that "[w]hen investigating drug activity, officers have a legitimate concern for their own safety, and that concern can justify a pat-down search for weapons").   Because the driver informed the trooper that appellee possessed drugs, the trooper possessed reasonable suspicion that appellee possessed drugs, which then justified his frisk of appellee.

the trooper approached appellee and requested him to roll down the window.   The trooper then requested appellee to "hop out here."    It does not appear that the trooper forcibly, or otherwise physically, removed appellee from the vehicle.

{¶ 30} As for the third factor, courts recognize that an individual need not be aware of the right to refuse an officer's request to search in order for consent to be deeded voluntary. Moreover, our review of the videotape in the case at bar fails to reveal any coercive or threatening conduct.   The trooper remained reasonably calm throughout the interaction and did not imply that he could search appellee regardless of consent.   When the trooper requested appellee's consent, appellee appeared cooperative and did not appear to resist the trooper's request.   Appellee cooperated with the trooper when the trooper requested appellee to remove items from his pockets. United States v. Jones (E.D.Tenn. 2007), No. 3:06-CR-149 (stating that defendant's failure to protest search of pockets indicated voluntary consent); see, also, State v. Crum, Montgomery App. No. 22812, 2009-Ohio-3012 (upholding search of defendant's pockets as valid consent search when defendant cooperated with officer).   The following factors further suggest that appellee voluntarily consented to the search: (1) appellee was not under arrest when the trooper requested consent; (2) the encounter occurred in a public parking lot; and (3) there is no evidence that the trooper indicated to appellee that he could search appellee regardless of consent.   We believe that the totality of the circumstances surrounding the interaction fails to show any coercive or threatening tactics.   Thus, we conclude that the trial court erred in finding that appellee did not voluntarily consent to the search.

{¶ 31} Accordingly, based upon the foregoing reasons, we hereby sustain the appellant's assignment of error, and reverse and remand this matter to the trial court for further proceedings consistent with this opinion.

JUDGMENT REVERSED AND CAUSE REMANDED.

Harsha, J., dissenting:

{¶ 32} I respectfully dissent from the majority's conclusion that Miller voluntarily consented to the search of his pockets.  Regardless of the fact that we are reviewing the same stipulation and video evidence as the trial court, I see no reason to deviate from the normal degree of deference we afford the fact finder concerning the issue of consent.  Just as importantly, my view of the CD and its audio reveals it conflicts with the trooper's stipulated statement.

{¶ 33} Based upon that review it is clear to me that the trooper asked and received consent to frisk Miller.  In my view such consent was not necessary to conduct a pat down but it is nevertheless important here because Miller's consent was given in response to a request for a pat down, not a full search.  When the frisk concluded without revealing any weapons or satisfying

"the plain feel exception" for drugs, the trooper had to stop.   But instead, in a search for evidence,

he told Miller to empty his pockets.   This clearly is not permitted under *Terry*, or a consensual

frisk.   Because the trooper did not ask for consent to search after the frisk, the additional intrusion

was not consensual.   Therefore, I dissent.

## JUDGMENT ENTRY

It is ordered that the judgment be reversed and remanded and that appellant recover of

appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe

Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate

pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J.: Concurs in Judgment & Opinion
Harsha, J.: Dissents with Dissenting Opinion

For the Court

BY:_____
Peter B. Abele
Presiding Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.