[Cite as *Carow v. Girton*, 2014-Ohio-570.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

COLLEEN CAROW (fka GIRTON), :
:
Plaintiff-Appellee, : Case No. 13CA13
:
vs. :
:
: <u>DECISION AND JUDGMENT</u>
SAMUEL DAVID GIRTON, : <u>ENTRY</u>
:
Defendant-Appellant. : **Released: 02/10/14**
_____
APPEARANCES:

Charles M. Elsea, Stebelton, Aranda & Snider, LPA, Lancaster, Ohio, for
Appellant.

James D. Sillery, Mollica, Gall, Sloan & Sillery Co., L.P.A., Athens, Ohio,
for Appellee.
_____

McFarland, J.

{¶1} Samuel David Girton appeals from the judgment of the Athens
County Court of Common Pleas finding him in contempt of a prior agreed
entry dated June 11, 2012. On appeal, Appellant contends that 1) the trial
court, in its January 24, 2013, decision on motion on charges in contempt
and judgment entry, erred in its construction of the parties' agreement as a
matter of law; and 2) the trial court abused its discretion in finding that an
agreement was reached between the parties with respect to extra-curricular
activities. In light of our finding that the trial court abused its discretion in

holding Appellant in contempt of the parties' prior agreed entry, we sustain Appellant's assignments of error and reverse the decision of the trial court.

FACTS

{¶2} The parties were married on June 25, 1994, and both became employed by Ohio University; Appellant, as an assistant professor, and Appellee, as an administrator with the college of engineering. The marriage began to deteriorate several years later and the parties filed for divorce in early 2008. The divorce was final on October 24, 2008. At the time of their divorce, the parties shared one minor child, E.G., age three at the time and approximately age eight during the proceedings below. As part of the divorce, the trial court issued a shared parenting order with respect to the parties' minor son.

{¶3} Several post decree motions have ensued since that time, leading up to the present contempt motion currently being appealed. A review of the record reveals that Appellee filed a motion in the Domestic Relations Division of the Athens County Court of Common Pleas on October 4, 2011, seeking orders on a multitude of issues, including "an order spelling out the terms and conditions of the scheduling and attendance of [E.G.'s] functions and extracurricular activities and summer camps[.]" An agreed entry was

subsequently filed on June 11, 2012, purporting to address and resolve all of the issues contained in the October 4, 2011, motion.

{¶4} The agreed entry provided as follows in paragraph 2 with respect to E.G.'s extracurricular activities, which is pertinent on appeal:

"Both parties may attend all of [E.G.'s] functions and extracurricular activities.

The parties commit to working toward agreement on E.G.'s extracurricular activities included but not limited to art, sports, music and education. The parties shall equally share the costs of all school fees and school related fees, tutoring and those extracurricular activities upon which they agree that [E.G.] will participate.

If there is not agreement, once per year each parent may have [E.G.] participate in an extracurricular activity including, but not limited to, art, sports, music and education for which that parent shall pay the sole cost. Prior to enrolling [E.G.] in an extracurricular activity, the enrolling parent will advise the other parent, in writing, so that schedules can be coordinated. Both parents will support [E.G.'s] participation and attendance including transporting [E.G.] during his or her custodial time.

> Each parent must advise the other, in writing, of the full
>
> schedule of such activity."

It is the alleged violation of this provision of the agreed entry which led Appellee to file charges in contempt and a motion to show cause on October 12, 2012.

{¶5} Appellee's contempt motion was a two branch motion, the first branch of which is at issue herein. This branch argued that Appellant was in contempt of the prior agreed entry by virtue of his refusal to allow E.G. to participate in soccer and cub scouts during his custodial time unless Appellee agreed, in writing, that she would not be attending those activities. A show cause hearing was held on November 16, 2012, at which both parties testified as to their interpretation of the agreed entry.

{¶6} The trial court issued a decision on motion on charges of contempt and judgment entry on January 24, 2013, finding Appellant in contempt of the agreed entry with respect to [E.G.'s] participation in extracurricular activities. Thereafter, on February 20, 2013, a disposition hearing was held. The trial court sentenced Appellant to ninety days in jail and ordered Appellant to pay Appellee's attorney fees. The trial court further suspended Appellant's jail sentence, providing Appellant purged his contempt, which included refraining from any further contemptuous activity

during the next year. It is from this contempt finding and final disposition which Appellant now brings his timely appeal, assigning the following errors for our review.

ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT, IN ITS JANUARY 24, 2013 DECISION ON MOTION ON CHARGES IN CONTEMPT AND JUDGMENT ENTRY, ERRED IN ITS CONSTRUCTION OF THE PARTIES' AGREEMENT OF JUNE 11, 2012 AS A MATTER OF LAW.

II.    THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT AN AGREEMENT WAS REACHED BETWEEN THE PARTIES WITH RESPECT TO EXTRA-CURRICULAR ACTIVITIES. "

LEGAL ANALYSIS

{¶7} Because the analysis of Appellant's assignments of error is interconnected, we address them together. These assignments of error essentially argue that the trial court abused its discretion in interpreting the language of the parties' agreed entry with respect to their son's participation in extracurricular activities, and as such, erred in finding Appellant in contempt of the prior order. Appellant seeks a determination that the language of the agreed entry is unambiguous and that his actions do not constitute contempt.

{¶8} Initially we note that "contempt of court" is the disobedience or disregard of a court order or a command of judicial authority. E.g., *Daniels*

*v. Adkins*, 4th Dist. Ross No. 93CA1988, 1994 WL 268263 (June 3, 1994);

*Johnson v. Morris*, 4th Dist. Ross No. 93CA1969, 1993 WL 524976 (Dec.

13, 1993). It involves conduct that engenders disrespect for the

administration of justice or "which tends to embarrass, impede or obstruct a

court in the performance of its functions." *Denovchek v. Trumbull Cty. Bd.*

*of Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988); quoting

*Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph

one of the syllabus (1971). "[T]he law of contempt is intended to uphold

and ensure the effective administration of justice[,]" and "to secure the

dignity of the court and to affirm the supremacy of law." *Cramer v. Petrie*,

70 Ohio St.3d 131, 133, 637 N.E.2d 882 (1994). A court "possesses both

inherent and statutory authority to compel compliance with its lawfully

issued orders." *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 252, 648

N.E.2d 1355 (1995); citing *Cramer* at 133-134 and R.C. 2705.02(A).

{¶9} A distinction exists between criminal and civil contempt. For

instance, criminal contempt proceedings "vindicate the authority of the legal

system and punish the party who offends the court." *McDonald v.*

*McDonald*, 4th Dist. Highland No. 12CA1, 2013-Ohio-470, ¶ 16; citing

*Scherer v. Scherer*, 72 Ohio App.3d 211, 214, 594 N.E.2d 150 (3rd Dist.

1991); *In re Skinner*, 4th Dist. Adams No. 93CA547, 1994 WL 93149 (Mar.

23, 1994). The sanction imposed for criminal contempt serves as a punishment for the completed act of disobedience. E.g., *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 254, 416 N.E.2d 610 (1980).

{¶10} Civil contempt, which is at issue herein, exists when a party fails to do something ordered by a court for the benefit of an opposing party. *McDonald*, supra, at ¶ 17; citing *Pedone v. Pedone*, 11 Ohio App.3d 164, 165, 463 N.E.2d 656 (8th Dist. 1983); *Beach v. Beach*, 99 Ohio App. 428, 431, 134 N.E.2d 162 (2nd Dist. 1955). The punishment is remedial, or coercive, in civil contempt. *State ex rel. Henneke v. Davis*, 66 Ohio St.3d 119, 120, 609 N.E.2d 544 (1993). Stated another way, civil contempt is intended to enforce compliance with a court's orders.

{¶11} The party seeking to enforce a court order must establish, by clear and convincing evidence, both the existence of a court order as well as the nonmoving party's noncompliance with the terms of the court order. *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4; *Morford v. Morford,* 85 Ohio App.3d 50, 55, 619 N.E.2d 71 (4th Dist.1993). The burden then shifts to the defendant to establish any defense. *Morford*.

" 'Clear and convincing evidence is that measure or degree of proof which is more than a "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a

reasonable doubt" in criminal cases, and which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' " McDonald v. McDonald at ¶ 18; quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus (1954).

{¶12} As such, even when the plaintiff bears the burden of proof by "clear and convincing" evidence, this Court's standard of review is deferential in that the presence of "some competent, credible evidence" requires us to affirm the trial court's judgment. *State v. Miller*, 4th Dist. Ross No. 11CA3217, 2012-Ohio-1901, ¶ 24; citing *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Further, "[t]his court reviews a finding of civil contempt under the abuse of discretion standard." *Lindsey v. Lindsey*, 4th Dist. Scioto No. 06CA3113, 2007-Ohio-3803, ¶ 18; citing *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 75, 573 N.E.2d 62 (1991); *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981); *McCleese v. Clemons*, 4th Dist. Scioto No. 05CA3016, 2006-Ohio-3011, ¶ 15.

{¶13} As indicated above, Appellant contends that the language of the agreed entry at issue is unambiguous. Appellant further argues that the agreed entry only required him to support the child in and transport the child

to extracurricular activities of which the parties agreed the child would participate. Appellant contends there was no agreement reached with respect to the child's participation in soccer and cub scouts and, as such, he was not in violation of the order for refusing to take the child to these activities during his custodial time.

{¶14} Appellee contends, on the other hand, that the fact the child had participated in these two activities for two years and would continue was "inherent" in the agreed entry and that Appellant's refusal to cooperate unless Appellee agreed, in writing, not to attend these activities during Appellant's custodial time is a violation of the terms of the agreement, which specifically provides that both parents may attend all of E.G.'s functions and extracurricular activities. The trial court agreed with Appellee's interpretation of the agreement, finding Appellant's actions to be not only contemptuous and "contra to the letter and spirit of the parties' agreement," but also "selfish and not supportive of [E.G.'s] best interests."

{¶15} "Where both parties agree on the terms of the Agreed entry in a divorce action, we find that the Agreed Entry is essentially a contract between the parties." *Oberst v. Oberst*, 5th Dist. Fairfield No. 08-CA-34, ¶ 59; citing *Klug v. Klug*, 2nd Dist. Montgomery No. 19369, 2003-Ohio-3042, ¶ 13; citing *In Re Adams*, 45 Ohio St.3d 219, 220, 543 N.E.2d 797 (1989).

As such, contract rules of interpretation apply.  Id.  As further noted in

*Oberst* at ¶ 60:

> "A general rule of contract interpretation is that 'if language in
>
> the contract is ambiguous, the court should construe the
>
> language against the drafting party.' Id. citing *Central Realty*
>
> *Co. v. Clutter* (1980), 62 Ohio St.2d 411, 413, 406 N.E.2d 515.
>
> 'However, when interpreting a contract, the court must first
>
> examine the plain language of the contract for evidence of the
>
> parties' intent.' Id. citing *Gottlieb & Sons, Inc. v. Hanover Ins.*
>
> *Co.* (April 21, 1994), Cuyahoga App. No. 64559.  If the
>
> contract language is ambiguous, then the court should consider
>
> extrinsic evidence to determine the parties' intent and
>
> ambiguities should be construed against the drafter."

**{¶16}**  Here, as the trial court indicated in its judgment entry, the

agreed entry was "was developed by the parties, a counselor, and possibly

their attorneys."  Thus, the parties are on even ground with respect to the

drafting of the agreement.  Further, after reviewing the pertinent provisions

of the agreed entry, we find the language to be straightforward,

unambiguous, and in accordance with Appellant's interpretation.  Thus,

there is no need to consider extrinsic evidence to determine the parties' intent.

{¶17}  While the plain language of paragraph two of the agreed entry, as set forth above, does provide that both parents may attend all of E.G.'s extracurricular activities, it also provides that the parties must agree on those extracurricular activities.  The specific language of the entry states that the parties "commit to working toward agreement" on extracurricular activities, not that there had already been an agreement reached with respect to certain activities such as soccer and cub scouts.  In fact, the trial court's finding that "[s]eemingly, the parties agreed on a list of extracurricular activities * * *" was not supported by competent, credible evidence and, as such, was in error.  This fact is confirmed by Appellee's own testimony during the contempt hearing.  Appellee testified as follows on cross examination:

"Q.   Ms. Carow, did Mr. Girton make offers to you regarding the soccer, the Boy Scouts?  Did he make offers to you for a way that he would be comfortable with those events happening?

A.   Yes.

Q.      And he offered that if you would agree not to attend that he would be comfortable with them and he would take him?

A.      Yes.

Q.      And you did not accept that offer.

A.      No.  I feel that that's inappropriate.

Q.      So you were unable to reach an agreement.  He made an offer, you declined it.  So there was no agreement. Correct?

A.      Correct.

Q.      You understand that the court order from June 11th says that if you're not able to reach an agreement then once per calendar year each parent may choose an activity?

A.      Yeah.

Q.      And you chose piano?

A.      Mm-hmm."

{¶18}  This fact the parties never reached agreement on a "list" of activities is further confirmed by a motion for a nunc pro tunc entry filed by Appellee herself after issuance of the court's final decision.  In that motion, Appellee points out that the agreed entry at issue "does not contain a

provision that the parties have a 'list' of activities in which [E.G.] can participate" and clarifies that the agreed entry "only speaks to the parties working toward agreement." The trial court, however, did not issue a nunc pro tunc entry.

{¶19} As set forth above, the record indicates that when agreement was not reached with respect to the child's participation in soccer and cub scouts, Appellee resorted to the provision contained in paragraph two of the agreed entry which allowed her to choose a single activity for the child to participate, and that was piano.[1] There was no evidence that Appellant failed or refused to take the child to this activity during his custodial time.

{¶20} This Court is well aware of the fact that the intention of the agreed entry was likely not to permit Appellant to withhold agreement on a particular extracurricular activity unless Appellee promised not to attend. In making his agreement to the activity contingent on Appellee's promise not to attend, Appellant has found a way around the language of the agreed entry without technically violating it. Although we agree with the trial court that such conduct is contrary to the best interest of the child, unfortunately we cannot find that it is a technical violation of the prior order of the court. As

---

[1] We take this opportunity to note that while the parties could not jointly agree on soccer or Cub Scouts, Appellee could have chosen one of these as her sole activity, rather than piano, and Appellant would have been required, by the terms of the agreed entry, to support the child in that activity and transport him to the activity during his custodial time regardless of whether Appellee planned to attend or not. At this juncture, we encourage the parties to work together for the sake of E.G.

such, we must conclude that the trial court erred and abused it discretion in

finding Appellant in contempt.  Accordingly, the decision of the trial court is

reversed.

**JUDGMENT REVERSED.**

Abele, P.J., concurring in judgment only with opinion:

{¶21}  It is extremely unfortunate that the genesis of this most recent controversy between the parties appears to be the appellant's desire to prevent the appellee, his former spouse and the child's mother, from attending their child's soccer games at a public park.  However, after perusing the voluminous history of this proceeding, my surprise is, unfortunately, completely unwarranted.  Nevertheless, appellant should be reminded that plentiful Ohio case authority stands for the proposition that one parent's actions that impede or deter the other parent's contact with their child is generally viewed as being against the child's best interest and may provide reason or justification to modify the amount of parenting time that a parent may share with the child.

Harsha, J., concurring:

{¶22}  I concur in judgment and opinion on the merit issues but write to address our jurisdiction.  I conclude the finding of contempt is a final appealable order even though the post-judgment motion contained two independent "branches" and the order on appeal addresses only one of them.  The finding of contempt is a final order under R.C. 2505.02(B)(2) as "[A]n order that affects a substantial right made * * * in a summary application in an action after judgment;"  And it's appealable by virtue of R.C. 2705.09, which states, "The judgment and order * * * of contempt may be reviewed on appeal. * * *."

{¶23}  Accordingly, I do not indulge in the presumption that the trial court implicitly denied the remaining "branch" by virtue of its failure to rule upon it.  Such a conclusion would be appropriate if the motion had been ancillary to a pending claim or cause of action that the court disposed of without addressing the motion.  The rule makes sense when applied to a final judgment granting relief that is adverse to or inconsistent with the relief sought in the ancillary motion.  Here we deal with an independent post-judgment motion that seeks two separate findings of contempt, i.e. a context in which the presumption does not logically apply.  If this were a post-judgment motion for modification of both spousal and child support and the

trial court addressed only one in its order, would we be justified in applying the presumption?  I think not.

**{¶24}**  So rather than apply the presumption, I simply conclude that R.C. 2505.02(B)(2) and R.C. 2705.09 combine to provide for an immediate appeal of a finding of contempt with one caveat, i.e. the order must also impose a sanction for the contemptuous conduct.  See *Purdy v. Purdy*, 4th Dist. No. 12CA3490, 2013-Ohio-280, ¶ 10.

**{¶25}**  Because R.C. 2505.02(B)(2) indicates the post-judgment order is final, and R.C. 2705.09 declares that orders of contempt are appealable, Civ.R. 54(B) does not come into play even though one "branch" of the motion technically remains unresolved.  See Painter & Pollis, *Ohio Appellate Practice*, § 2:16 (Ed.2013-2014).  Thus, I conclude we have jurisdiction to address the merits of the appeal.

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED and that the Appellant recover of Appellee costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.: Concurs in Judgment Only with Opinion.
Harsha, J:   Concurs with Concurring Opinion.

For the Court,

BY:   _____
Matthew W. McFarland, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**